In re Benedict Joseph PETERSON, Jr., Debtor.

MARION NATIONAL BANK, Plaintiff,

v.

Benedict Joseph PETERSON, Jr., Defendant.

Bankruptcy No. 3–82–01753.
Adv. No. 3–82–0416.

United States Bankruptcy Court,
W.D. Kentucky.

Aug. 10, 1984.

Theodore H. Lavit, Lebanon, Ky., for defendant.

J.R. Bartholomew, Louisville, Ky., for plaintiff.

## MEMORANDUM OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

Marion National Bank has alleged nondischargeability of a debt due and owing on a loan procured by debtor herein. The claim of nondischargeability is premised on 11 U.S.C. § 523(a)(2)(A), (B), and § 523(a)(6).

The Court finds that Marion National Bank has failed to prove exception of this debt from discharge pursuant to provisions of the Code on Bankruptcy. Findings of fact are now set forth in support of this Court's conclusions of law.

## FINDINGS OF FACT

In August, 1977 debtor contracted for deed to a restaurant and nightclub, including equipment and fixtures therein, for an established purchase price of $130,000.00. The contract for sale provided that upon debtor's timely payment of $50,000.00 plus any accrued interest, title to the property would transfer by general warranty deed to debtor herein.

Debtor initially obtained financing for the venture from Citizens Bank. However,

a dispute arose on or about February 14, 1981 regarding the alleged unpaid balance of $48,000.00. Thereafter, the Executive Vice-President of Marion National Bank, debtor's friend and creditor's representative in the loan transaction in issue, approached debtor with an offer to finance debtor's business endeavor. Subsequently, debtor obtained a loan amount of $57,000.00 from Marion National Bank, said monies used to extinguish debtor's obligation to Citizens Bank and to finance remodeling of the nightclub.

As security for the loan, Marion National Bank required debtor's father to co-sign a $25,000.00 note. Further, Marion's lending officer asked debtor to execute a security agreement and financing statement prepared by the Bank, said documents containing a representation on the back that all collateral subject to the parties' agreement would remain unencumbered property of debtor. The Executive Vice-President then asked debtor to make a list of all personalty in the restaurant and nightclub and return said list to the Bank. Debtor acted accordingly. A bank clerk, without authority to approve a loan, affixed the list of equipment to the executed security documents.

Although 47 items of equipment in the restaurant and nightclub were listed as collateral, only 28 items were solely owned by debtor. The remaining 19 items of equipment were subject to debtor's purchase agreement whereby seller still retained legal title due to debtor's payment prior to default of only $45,000.00 plus interest.

Uncontroverted testimony by Marion National Bank's former Vice-President established that debtor was not asked during loan negotiations whether he had acquired any ownership rights in the equipment. Further, the Bank made no physical inspection of the equipment for purpose of valuing same as collateral for the loan.

On January 1, 1982 debtor petitioned this Court for relief in bankruptcy. Debtor's father met his obligation on the $25,000.00 note, leaving a remaining debt of $29,449.40. Marion National Bank now contends that this amount resulted from the Bank's reasonable reliance upon debtor's misrepresentation in the financing statement that title to all collateral would remain with debtor and unencumbered; further, that said reliance created a loss to the Bank when debtor filed for relief in bankruptcy and the discharge order was entered.

## CONCLUSION OF LAW

Marion National Bank has alleged that debtor's remaining loan obligation of $29,449.40, or alternatively the $9,425.00 value of equipment set forth in debtor's schedule of assets, is a nondischargeable debt by application of 11 U.S.C. § 523(a)(2)(A), (B) and § 523(a)(6). In its final memorandum to the Court, however, Marion National Bank failed to address the issue of nondischargeability of this debt by application of 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6). Thus, the Court now considers only whether Marion National Bank clearly and convincingly proved to the Court that the debt, necessarily limited to the value of the 19 items of equipment when the bankruptcy proceeding commenced, is excepted from discharge by application of 11 U.S.C. § 523(a)(2)(B). Specifically, this statutory provision states:

(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

   \*    \*    \*    \*    \*    \*

(2) for obtaining money, property, services or an extension, renewal, or refinance of credit, by

(B) use of a statement in writing—

  (i) that is materially false;

  (ii) respecting the debtor's or an insider's financial condition;

  (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

  (iv) that the debtor caused to be made or published with intent to deceive; ...

Code on Bankruptcy, 11 U.S.C. § 523(a)(2)(B).

▆▆▆▆ Marion National Bank has the burden of proving the five elements of § 523(a)(2)(B) before this Court can conclude the debt to be excepted from discharge. See *In re Aldrich,* 16 B.R. 825 (W.D.Ky.1982). As stated in *Aldrich,* partial reliance on a false financing statement may suffice for a material misrepresentation required by § 523 for exception to discharge of a debt. However, the Court in *Aldrich* further concluded that a false financial statement must have been so considered by the creditor that the loan would not have been granted without creditor's reliance on the borrower's misrepresentation therein. See also *In re Featherston,* 1 B.C.D. 1485 (W.D.Wis.1975). Further, a creditor's reliance on the misrepresentation must have been reasonable. *In re Duncan,* 30 B.R. 754 (W.D.Ky.1983).

As expounded in *In re Duncan,* reliance by a creditor on a false financial statement has been judicially determined unreasonable when: (1) the creditor knew the financial information was not accurate; (2) the statement contained inadequate financial information; (3) the creditor's investigation of the statement suggested its falsity or incompleteness; and (4) the creditor failed to verify information in the statement.

▆▆▆▆ Applying these factors denoting unreasonable reliance by a creditor on a false financing statement, the Court must conclude in the case at bar that Marion National Bank's alleged reliance when the loan transaction was consummated on debtor's sole ownership of the 19 items of collateral listed by debtor was unreasonable. The security documents were executed without identification of those items of equipment in the restaurant and nightclub which were to act as collateral for the $32,000.00 loan balance. Thereafter, debtor produced a list of all equipment in the restaurant and nightclub, at the Bank's direction, said list never analyzed by the lending officer but merely attached by a bank clerk to the security documents. Further, the Bank's Vice-President testified that he failed to inquire regarding debtor's ownership interests in any of the equipment to be listed by debtor, but rather assumed debtor owned said equipment in full. The equipment was not inspected to verify its physical presence in the establishment nor was its value determined to assure the Bank of adequate protection for the remaining loan amount of $32,000.00.

The Court cannot hold that the aforementioned procedures for making this loan to debtor are indicia of a prudent investor's reasonableness when engaging in financial transactions. A mere inquiry by Marion National Bank regarding debtor's ownership rights in the 19 items of equipment in issue, or an investigation of the Bank sufficient to ascertain title thereto, would have revealed debtor's mere equitable interest in part of the pledged collateral. The Bank cannot now vest debtor with the intent of, and responsibility for, misrepresenting what a reasonable inquiry by the Bank would have revealed during early loan negotiations.

The Bank's remission in failing to verify information contained in a financing statement prepared by its officer further suggests that the Bank did not reasonably rely solely on representations contained therein. Rather, testimony by the Bank's former Vice-President that he had solicited debtor's banking business, and indirectly that of debtor's father as surety on the $25,000.00 note, appeared to portray to the Court the catalyst which brought the financial transaction ultimately to fruition.

Because Marion National Bank has failed to prove by clear and convincing evidence that the debt loss in issue would not have occurred but for the misrepresentation in the financing statement of debtor's sole ownership of 19 of the 47 items of equipment, the Court finds that the $9,425.00 value listed by debtor in his schedule of assets for these 19 items was within the purview of this Court's discharge Order entered December 14, 1982.

This Memorandum Opinion constitutes Findings of Fact and Conclusions of Law pursuant to Rule 7052, Rules of Bankrupt-

cy Procedure, and an appropriate Order has been entered this 10th day of August, 1984.