In re Antolin J. PEREZ, Debtor.

**BANK OF LOUISVILLE, Plaintiff,**

v.

**Antolin J. PEREZ, John Wilson, Trustee, Defendants.**

Bankruptcy No. 3–83–01041.
Adv. No. 3–83–0242.

United States Bankruptcy Court, W.D. Kentucky.

Sept. 9, 1985.

Stephen J. Tillman, Louisville, Ky., for plaintiff.

J. Daniel Landrum, Louisville, Ky., for defendant.

John Wilson, Louisville, Ky., Trustee/defendant.

## MEMORANDUM–OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before the Court on a Complaint filed by the plaintiff, Bank of Louisville, seeking a determination that the debt due and owing said plaintiff by the debtor is nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(B). A trial was held on this matter on February 12, 1985. The Court finds that the Bank of Louisville has failed to prove exception of this debt from discharge pursuant to Section 523(a)(2)(B) of the Bankruptcy Code. Findings of fact are now set forth in support of this Court's conclusions of law.

## FINDINGS OF FACT

On or about April 29, 1982, the Bank of Louisville loaned funds in the original amount of Three Hundred Thousand Dollars ($300,000.00) to Plainview Entertainment, Inc. (hereinafter "Plainview"), a corporation in which the defendant, Dr. Antolin J. Perez, was a majority stockholder. Perez personally guaranteed the loan from the Bank to Plainview. Additionally, the Bank took a lien on equipment and inventory, and received in excess of $100,000.00 in Certificate of Deposits as security. Prior to the closing held on April 29, 1982, the Bank requested and received from Dr. Perez his financial statement, which was prepared by him and was not on the Bank's standard form and did not include some of the information included on the Bank's form. Unlike the Bank's form, Dr. Perez's financial statement did not contain a statement that "... the above information is true and accurate to the best of my knowledge and belief". The Bank requested that Dr. Perez sign and date the financial statement, which he did on April 21, 1982. The Bank did not ask Dr. Perez to supplement his statement in any manner.

Bill Givens, the loan officer from the Bank in charge of this transaction, testified that the Bank appraised three pieces of real estate listed on Dr. Perez's financial statement dated April 21, 1982, and considered their value to be much lower than estimated by Dr. Perez. Incorporated into the financial statement was a statement listing the assets of Riverside Gems Import Company, Inc. (hereinafter "Riverside"), a family-owned corporation of which Dr. Perez was a minority stockholder. The statement listing the assets of Riverside was dated November 11, 1981. There was also listed stock held in two privately-held restaurants, accounts receivables from his medical practice, office equipment, Certificates of Deposit, and vehicles. Mr. Givens testified that no inquiries were made by the Bank as to the method of valuation for the assets of Riverside Gems, for the privately-held stocks or office equipment. Dr. Perez testified that he assigned the retail value to the assets. Retail value was approximately three to four times greater than the wholesale price. He further testified that some of the gems listed on the statement were sold to raise part of the purchase price for the Lone Star, the restaurant-bar being purchased by Plainview. No inquiry was made as to whether Dr. Perez owned these assets individually or whether he held joint title with his wife.

Subsequent to the closing on April 29, 1982, Plainview and its guarantors defaulted on the loan and by subsequent agreement, the assets of Plainview were liquidated, and the proceeds derived therefrom used and applied to the repayment of the note.

After liquidation, there remained a deficiency balance upon the note of One Hundred Fifty-One Thousand Three Hundred Sixty-Nine Dollars and Seventy-Five Cents ($151,369.75). On March 21, 1983, Dr. Perez executed a demand note for the amount of the deficiency balance, plus interest. An employee of the Bank testified that the original note had been marked as cancelled. The new note was at an increased interest rate, and was unsecured.

There is a dispute as to whether, prior to the execution of the deficiency note, the Bank requested current financial statements of Dr. Perez and Mr. Hartlev, co-guarantor on the previous note. Mr. Givens claims he requested them, but Dr. Perez refused to furnish the same, saying that their assets were substantially the same as from the previous statement dated April 21, 1982. Dr. Perez and Mr. Hartlev contend that they were not asked for new financial statements. Givens did not, however, require Dr. Perez to redate the financial statement.

There is also a dispute as to whether Mr. Givens requested that Dr. Perez's wife co-sign the March, 1983 note, and whether he was told by Dr. Perez that she refused to sign the same. However, a memo prepared by Mr. Givens was introduced which indicated that he did have knowledge that neither Dr. Perez nor Mr. Hartlev's wives would co-sign the note.

Mr. Givens further admitted that he was aware of Plainview's problems. He, in fact, supervised the removal of the assets and was instrumental in securing a purchaser for the assets. Givens also admitted that the Certificate of Deposits of Dr. Perez totalling $121,206.52 were cashed and applied to the original loan, all of which was prior to the note of March 21, 1983 being executed.

On May 23, 1983, the debtor petitioned this Court for relief in bankruptcy. The Bank of Louisville contends that the remaining debt owed it of $151,369.75, pursuant to the note executed by Dr. Perez in March, 1983, resulted from the Bank's reasonable reliance upon debtor's financial statement dated April 21, 1982; further, that said reliance created a loss to the Bank when debtor filed for relief in bankruptcy.

## CONCLUSIONS OF LAW

The Bank of Louisville has alleged that debtor's loan obligation to it is a non-dischargeable debt by application of 11 U.S.C. Section 523(a)(2)(B). Specifically, this statutory provision states:

(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—...

(2) for obtaining money, property, or an extension, renewal, or refinance of credit, by

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

...

The Bank of Louisville has the burden of proving all five elements by clear and convincing evidence before the debt is excepted from discharge. *In re Martin*, 761 F.2d 1163 (6th Cir.1985). *In re Peterson*, 49 B.R. 1 (Bkrtcy., W.D.Ky.1984); *In re Bridges*, 51 B.R. 85 (Bkrtcy., W.D.Ky. 1985).

In the present action, there is no question but that the documents clearly show that the allegedly false financial statements were in writing and concerned the debtor's financial condition. It is also clear that Perez's overstatements of his net worth were material, as set forth in the findings of fact. *See In re Winfree*, 34 B.R. 879 (Bkrtcy., M.D.Tenn.1983); *See also, In re Denenberg*, 37 B.R. 267 (Bkrtcy., D.Mass.1983). It is the third factor of the nondischargeability analysis, that of reasonable reliance, which is the critical element.

■ As expounded in *In re Duncan*, 35 B.R. 323, 325 (Bkrtcy., W.D.Ky.1983), reliance by a creditor on a false financial statement has been judicially determined unreasonable when:

1). The creditor knew the financial information was not accurate;

2). The statement contained inadequate financial information;

3). The creditor's investigation of the statement suggested its falsity or incompleteness; and

4). The creditor failed to verify information in the statement.

*See* 35 B.R. at 325 n. 7; *See also, In re Weiss*, 42 B.R. 314 (Bkrtcy., E.D.Pa.1984); *In re Peterson, supra* at 3. The reasonableness requirement was intended to incorporate prior case law into the current Bankruptcy Act. S.Rep. No. 598, 95th Cong., 2d Sess. 78; H.R.Rep. No. 595, 9th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Initially, the Bankruptcy Court should make its determination of reasonableness considering all the facts and circumstances of the case, including the size of the loan. *In re Martin*, 761 F.2d 1163, 1166 (6th Cir.1985).

■ Applying these factors denoting unreasonable reliance by a creditor on a false financial statement, the Court must conclude in the case at bar that Bank of Louisville's alleged reliance on debtor's financial statement dated April 21, 1982 was unreasonable. In this case, there is uncontroverted testimony by Mr. Givens that he knew that some of the information was not accurate, e.g., the values placed on the real estate by Dr. Perez. He also knew that the CDs totalling $121,206.52 listed on the statement had been cashed in and applied to the original loan prior to the second note being executed. Further, he was aware or should have been aware that the statement contained inadequate financial information inasmuch as it did not contain some of the routine information required on the Bank's standard form. The Bank also failed to verify some of the information in the statement as to the method of valuation for the assets of Riverside Gems, the privately held stocks or office equipment. Nor was any attempt made to verify the collectability of the accounts receivable listed as an asset on the statement.

The Court cannot hold that the aforementioned procedures for making this loan to debtor are indicia of a prudent investor's reasonableness when engaging in financial transactions. Inquiry by the Bank regard-

ing debtor's method of valuation for various assets would have revealed his overstated net worth. *In re Peterson, supra* at 3.

The Bank's remission in failing to verify information contained in a financing statement prepared by the debtor further suggests that the Bank did not reasonably rely *solely* on representations contained therein, either as to the first note for $300,000.00, or for the "deficiency" note of $151,369.75. *In re Peterson, supra*. Rather, testimony by Mr. Givens reveals that in fact the Bank relied on what it perceived Dr. Perez's earning capacity to be as a physician. Mr. Givens stated at trial:

"Q. Mr. Givens, would you explain to the Court what, if any, emphasis was given to that financial statement in making this loan to the Lone Star?

A. As I testified earlier, we always look at the financial statements of an individual. You know, with—not only the financial statement, *but also the fact that it was a doctor with good earning power.* We felt very comfortable in the fact that the financial statement was very strong *with his potential of earnings being very strong." (Emphasis added).*

(Trial Transcript, pp. 20–21).

As to the "deficiency" note of March 21, 1983, Mr. Givens stated:

"Q. Is there any particular reason why at this point in time the Bank of Louisville did not take any collateral to secure payment of this deficiency balance from Dr. Perez?

A. We were making it on Dr. Perez's financial strength and his reputation in the marketplace."

(Trial Transcript, p. 39).

Because the Bank of Louisville has failed to prove by clear and convincing evidence that the debt loss in question would not have occurred but for the misrepresentations in the debtor's financing statement, the Court finds that the $151,369.75 debt due and owing the Bank is not an exception from discharge pursuant to Section 523(a)(2)(B).

This Memorandum-Opinion constitutes Findings of Fact and Conclusions of Law pursuant to Rule 7052, Rules of Bankruptcy Procedure. An appropriate Order will be entered this date.