**In re Mark D. LINEBERRY, Debtor.**

**Beverly TAYLOR, Plaintiff,**

v.

**Mark D. LINEBERRY, Defendant.**

**Bankruptcy No. 3-84-00036.**
**Adv. No. 3-84-0032.**

United States Bankruptcy Court,
W.D. Kentucky.

Nov. 19, 1985.

J. Baxter Schilling, Louisville, Ky., for plaintiff.

L. Stanley Chavin, Jr., Louisville, Ky., for defendant.

## MEMORANDUM–OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before the Court on plaintiff-creditor's Complaint, objecting to the discharge of certain debts under 11 U.S.C. Section 523(a)(5) and/or to debtor's Chapter 7 discharge under 11 U.S.C. Section 727(a)(2)(A), Section 727(a)(3), Section 727(a)(4)(A), Section 727(a)(4)(D), and Section 727(a)(5).

The plaintiff is the former wife of the debtor-defendant, and the "debts" in question arose from the state court decree disposing of the property interests, maintenance and support issues flowing from this divorce proceeding.

At issue is the interpretation to be given certain provisions of the state decree, i.e., whether certain awards therein are in the nature of maintenance and/or support. Additionally, plaintiff alleges that defend-

ant must be denied a discharge under Sections 727(a)(2)(A), (a)(3), (a)(4)(A), (a)(4)(D), and (a)(5), as his conduct has been violative of the provisions set forth therein.

At the outset as this Court has stated previously, "it must be recognized that this court in applying the law under Title 11, can neither abate the highly charged emotional feelings of the parties nor lessen the bitterness resulting from the termination of the marital relationship." *In re Bailey*, 53 B.R. 732 (Bkrtcy., W.D.Ky., 1985). The plaintiff argues that the debtor's conduct prior to the filing of this bankruptcy petition and disclosures therein fall significantly short of that standard required by the Code, and accordingly, his right to a discharge should be denied under Sections 727(a)(2)(A), (a)(3), (a)(4)(A), (a)(4)(D), and/or (a)(5). Further, this opinion must determine the legal consequences of the state court provisions in the context of a subsequently filed bankruptcy, testing whether such provisions or awards are non-dischargeable under Section 523(a)(5).

It is well-settled that the burden of proof is on the plaintiff when challenging the debtor's right to a discharge. Rules of Bankruptcy Procedure 4005. Further, it should be noted that the plaintiff's burden of proof on the Section 727 claims is that of clear and convincing evidence before the debt is excepted from discharge. *In re Martin*, 761 F.2d 1163 (6th Cir.1985); *In re Perez*, 52 B.R. 824 (Bkrtcy., W.D.Ky.1985).

In the instant case, issues under Section 727 have been raised which, if established, would make moot a determination of the Section 523(a)(5) challenge. Therefore, this court will first address the plaintiff's complaint relative to the debtor's conduct under the applicable Sections of 727, which provide:

Section 727. Discharge.

(a) The court shall grant the debtor a discharge unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or any officer of the estate charged with custody of property under this title, has

**512**

transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

More specifically, the plaintiff alleges that the debtor transferred, removed or concealed certain property within one year before filing the petition, which property consisted of over $8,000.00 from an account known as the "MDIC" (Medical Doctors Investment Club) account. Further, plaintiff alleges that the debtor has failed to keep proper records and books concerning the aforestated $8,000.00 in the MDIC account; that he made a false oath in that he failed to list the MDIC account in the Statement of Affairs of his bankruptcy petition; and that he has withheld information and records concerning the MDIC account from his Trustee. Finally, the plaintiff alleges that the debtor has failed to explain satisfactorily the loss or deficiency of his assets, particularly the depletion of the MDIC account in a period from July 16, 1983 through December 14, 1983, which shortly preceded his filing his petition in bankruptcy on January 9, 1984.

The debtor, in rebuttal, offered testimony that there was no intent to conceal any property of his estate from the creditor inasmuch as she admitted that she was aware of the existence of the MDIC account on the day he filed his petition; that he has not destroyed any records concerning his financial condition inasmuch as he has never kept records; that he did not knowingly make a false oath in his Statement of Affairs by omitting the MDIC account inasmuch as the omission was inadvertent. Finally, debtor offered testimony concerning itemizations as to the expenses he incurred and the manner in which they were paid by withdrawing sums from the MDIC account.

■ The court now addresses plaintiff's proof to determine whether a prima facie case has been presented on the elements contained in the applicable Sections of 727. This court has previously held that the intent requisite to preclude a discharge under Section 727(a)(2)(A) must be an actual fraudulent intent as distinguished from constructive intent. *In re Chambers*, 36 B.R. 791 (Bkrtcy., W.D.Ky.1984); *In re Waddle*, 29 B.R. 100 (Bkrtcy., W.D.Ky. 1983). After reviewing the testimony and proof submitted, it is the opinion of the Court that plaintiff has failed to sustain its burden of proving fraudulent intent essential to its objection under Section 727(a)(2)(A). The plaintiff admitted she knew of the MDIC account, so there was no concealment of the asset. Further, despite plaintiff's multitude of Section 727 claims, it is the opinion of the Court that plaintiff has failed to sustain its burden of proof on all of the Section 727 objections.

■ As to the Section 727(a)(3) objection, plaintiff has presented no proof that debtor has destroyed any financial information or records. While there was testimony by the debtor that he is not the best recordkeeper as to his personal financial records, such testimony does not make out a prima facie case under Section 727(a)(3). *In re Cycle Accounting Services*, 43 B.R. 264 (Bkrtcy.,

E.D.Tenn.1984). In fact, Dr. Lineberry has never kept accurate financial records. During the marriage, the plaintiff who is a C.P.A., always kept meticulous records of their financial affairs.

 Two elements must be present to deny discharge under Section 727(a)(4)(A): (1) debtors' oath must have been knowingly and fraudulently made; and (2) it must have related to a material fact. *In re Waddle, supra* at 103. Generally speaking, a debtor who, without fraud, omits from his sworn schedules property of no value is not guilty of making a false and fraudulent oath. *Id.* The debtor contends that his failure to list the MDIC account was the result of an honest mistake on his part. He testified that he did not list the account because it had no funds in it at the time he filed and he, therefore, did not consider it an asset of his estate. Debtor has amended his Statement of Affairs to show the MDIC account as one that he maintained for a two-year period prior to filing his petition. It has been held that the courts will not deny discharge when a false statement in the Statement of Affairs is due to mere mistake or inadvertence. *In re Butler*, 38 B.R. 884, 889 (Bkrtcy.D.Kan., 1984).

 Plaintiff's objection to discharge under Section 727(a)(5) also must fail in that the debtor has offered what the Court finds to be a satisfactory explanation of the depletion of the MDIC account. The standard by which explanation of loss or deficiency of assets to meet liabilities is measured is one of reasonableness or credibility. *In re Cohen*, 47 B.R. 871, 874 (Bkrtcy., S.D.Fla.1985).

Although the debtor is not, by his own admission, the best recordkeeper, he did offer specific itemizations of how the money from the MDIC account was spent in the questioned two and a half month period. He did not trace the entire sum, but stated that it was an abnormal time in his life and that he expended the funds on travel expenses related to his application for fellowships, large household purchases, attorney's fees in connection with his divorce

action, and other living expenses. After hearing the testimony of Dr. Lineberry and viewing the demeanor of the witness, the Court finds that he has given a credible and satisfactory explanation of the loss of this asset, particularly since the debtor customarily used cash. *See, In re Church*, 47 B.R. 186 (Bkrtcy., E.D.Tenn.1985).

Next addressing the Section 523(a)(5) issue, the Court is called upon to determine the significance to be given the provisions contained in the Findings of Fact and Conclusions of Law entered by Judge Olga S. Peers, Jefferson Circuit Court, on September 15, 1983, following a two-day trial of the divorce action involving the plaintiff-creditor and defendant-debtor herein. Said Findings of Fact and Conclusions of Law made detailed findings relative to the division of non-marital and marital property, and marital and non-marital debts of the parties. Judge Peers further made findings as to the age, professions and relative present and future earning powers of the parties. The plaintiff was awarded two separate sums of money: $24,353.65 as reimbursement for payment of the defendant's living expenses during the marriage, and $45,562.50, as a proportionate interest in defendant's future earning capacity. More specifically, as to the $24,353.65 reimbursement for living expenses, Judge Peers found as follows:

> Based on the petitioner's Exhibit #17, which the Court accepts as accurate, the *petitioner paid $24,353.65 of marital expenses over the course of the marriage which can be assigned to the respondent Lineberry as his share of those marital expenses while he was earning his medical degree.* This amount does not include any purchase of personal property in the marital estate. The *petitioner convincingly and conclusively accounted for every penny of the $24,353.65,* and the calculations submitted by her as a qualified expert remain unrefuted and unchallenged. The testimony of the respondent was clear and unequivocal that his life and lifestyle would not have been nearly so comforta-

ble, both financially and otherwise, without the dedication and financial support of the petitioner. The petitioner in arriving at the figure of $24,353.65, allocated to the respondent 50% of such items as the house payment, insurance, groceries, etc. and 100% of such items as direct payments made to Lineberry or clothing that she bought for him, or other expenses in which she did not share the benefits.

As to the award of $45,562.50, as a proportionate interest in defendant's future earning capacity, Judge Peers found:

The respondent, because of his education and licensing, is now able to function as a medical general practitioner. The expert testimony of Dr. Anthony Gamboa established a differential in earning capacity for the respondent from the date of the marriage to the present as being $36,450.00 per year, said increase having been made solely through the respondent's medical degree. According to Dr. Gamboa, at the time of the marriage the respondent's most marketable skill was that of a chemist in a pharmaceutical industry. That was his maximum power to earn money. He further testified as to the respondent's income potential in the year of separation with skills constant with those of the date of marriage. The median figure for a chemist in 1981 was $27,500. This information came from the American Chemistry Society Publication for an experienced chemist. The median income for a doctor in general practice in 1981 was $63,950. This information was gleaned from a publication called "Medical Economics", a journal published on September 13, 1982. Both of these figures are pre-taxed, net earnings. Therefore, the increase potential is $36,450 per year.

The life expectancy table of K.R.S. indicated that at the current age of the respondent, he has a working life in excess of thirty years. However, the *Court recognizes that had the dissolution of marriage come at a time in the future that the petitioner, being a certified public accountant and fully employed with the ability to support herself, would not have been entitled to any maintenance payments.* However, had Lineberry been practicing his profession, there is no doubt there would have been more marital assets to divide. An equitable resolution may be that since the parties lived together in marriage for a period of five years during the whole period of which the petitioner maintained the respondent's living expenses, *she is entitled to share to the extent of 25% of the respondent's enhanced potential for the next five years, or a total sum of $45,562.50.* (Emphasis added.)

The issues presented are whether the sums of $24,353.65 and $45,562.50, respectively set forth above, are alimony, maintenance, or support and therefore, nondischargeable as provided in Section 523(a)(5)(B), which states as follows:

(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support.

It is well-settled that the burden of proof in contesting the dischargeability of a debt is upon the plaintiff-creditor. *In re Calhoun*, 715 F.2d 1103, 1111 (6th Cir.1983); *In re Elder*, 48 B.R. 414, 416 (Bkrtcy.W.D. Ky., 1985). It has been the experience of this court in addressing issues under Section 523(a)(5), that the outcome is totally dependent on the definition given the state court provisions purporting to award certain property or monetary sums. Once such awards are defined as maintenance or support, the applicability of Section 523(a)(5) becomes readily apparent. *In re Bailey*, 53 B.R. 732 (Bkrtcy.W.D.Ky., 1985).

As eloquently stated by Judge Newsome in the *Matter of Wesley*, 36 B.R. 526 (Bkrtcy., S.D.Ohio 1983):

The issues presented by dischargeability disputes under Section 523(a)(5) are far easier to state than they are to resolve. A major portion of the difficulty stems from the statutory language itself. In essence, the statute states that alimony, maintenance and support obligations arising by agreement or judicial decree are not dischargeable, unless such obligations cannot be viewed as being in the nature of alimony, maintenance or support under the federal common law of bankruptcy. The Bankruptcy Court is constrained from acting as a "super divorce court", while at the same time directed to divine the intentions of the parties and the Court at the time the marital dispute was resolved, notwithstanding the language of governing documents. The difficulty of the assigned task is compounded by the unpleasantness of the subject matter involved. Typically, the rehashing in Bankruptcy Court of an emotional and bitter period in both parties' lives offers little aid in resolving the issues at hand.

As a preliminary matter, the Court first notes that the Sixth Circuit has set forth the analysis to be used in support cases under 11 U.S.C. Section 523(a)(5) in *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). The Court believes that *Calhoun*, although involving a debt assumption provision, has general applicability to all support cases brought under 11 U.S.C. Section 523(a)(5). *In re Helm*, 48 B.R. 215, 220 (Bkrtcy.W.D. Ky., 1985); *Matter of Wesley*, 36 B.R. 526, 529 n. 1 (Bkrtcy.S.D.Ohio, 1983).

As succinctly set forth in *In re Helm*, *Calhoun* requires a four-step inquiry to be made by the bankruptcy court to consider whether:

(a) the *intent* of the state court or the parties was to create a support obligation;

(b) whether the support provision has the actual *effect* of providing necessary support;

(c) the amount of support is so excessive as to be *unreasonable* under traditional concepts of support, and finally,

(d) if the amount of support is unreasonable, *how much* of it should be characterized as nondischargeable for purposes of federal bankruptcy law. 48 B.R. at 221.

As this was a contested divorce case, with a two day trial held in state court, this Court need only consider the intent of the *court* which created the obligation by its decree. *In re Calhoun, supra* at 1109 n. 10; *In re Helm*, 48 B.R. 215, 221 (Bkrtcy., W.D.Ky.1985); *In re Jackson*, 48 B.R. 616 (Bkrtcy., W.D.Ky.1985). However, the Court believes that the two separate sums of money awarded by the state court must be defined differently. The state court awarded the plaintiff $24,353.65 as *reimbursement* for payment of the debtor-defendant's living expenses during the marriage, and $45,562.50, as a proportionate interest in defendant's future earning capacity. The $24,353.65 portion of the state court judgment represents the amount that the plaintiff contributed to the marriage in excess of the debtor's contribution and recognizes by judgment said sum as a debt due and owing the plaintiff. As such, the Court finds that the $24,353.65 award constitutes a judgment debt and is dischargeable inasmuch as it is not in the nature of maintenance and support.

Lastly, the Court will address the intent of the state court in awarding the $45,562.50, as a proportionate interest in defendant's future earning capacity. The instant case is distinguishable from *In re Helm, supra*, which involved an *uncontested* divorce case in which the Bankruptcy Court was determining the intent of both of the *parties* with respect to the debt in question. As the Sixth Circuit Court of Appeals stated in *In re Calhoun:*

We recognize that such inquiry may, in effect, modify a judgment or decree of a state court. In view of the congressional mandate to apply a federal standard, this cannot be avoided. *Actual interference, however, will probably be minimal. In a contested case the likelihood that the state court would have awarded support where it was unnecessary is sufficiently remote that such interference*

*by the bankruptcy court will seldom be necessary.* (Emphasis added). *Id.* at 1110 n. 10.

This position is further denoted in *In re Helm:*

This is not to say that bankruptcy courts are to totally ignore prior state court divorce decrees. In cases where it is clear that the state court has clearly and carefully considered the question of support *in the context of a contested case* ... then it is extremely unlikely that a bankruptcy court would make a contrary finding as to the true nature of the support obligation. (Emphasis in original). 48 B.R. at 220, n. 13.

This Court believes that the instant case falls squarely within this admonition and is one in which this Court's interference with the state court's findings are unnecessary as to the support obligation. A thorough review of the state court findings reveals that the intent of the state court was to create a support obligation. The state court stated that had the dissolution come at a future time, that the plaintiff herein would not have been entitled to any *maintenance payments;* however, if the debtor would have been practicing his profession, there would have been more marital assets to divide. The state court then went on to make an award to plaintiff, citing *Inman v. Inman,* Ky., 648 S.W.2d 847 (1982), as support for the allowance of maintenance to provide for the plaintiff's reasonable needs. It appears that in making its findings, the state court considered the necessary statutory requirements (KRS 403.200), as well as the applicable case law and intended to create a support obligation to the plaintiff which had the effect of providing necessary support, taking into account the living standards of the parties. *See, Lovett v. Lovett,* Ky., 688 S.W.2d 329 (1985).

*Calhoun* recognizes that "[t]he distribution or existence of other property" may make other forms of support payments unnecessary. *Long v. Calhoun,* 715 F.2d at 1109; *In re Helm,* 48 B.R. at *224.* Logically then, the reverse must also be true: the non-existence of other property may make

other forms of support payments necessary. This was the precise finding of the state court; as there were few marital assets to divide, an award of maintenance was made to the plaintiff.

The third level of inquiry under *Calhoun* requires the Bankruptcy Court to determine whether the amount of support is so excessive that it is manifestly *unreasonable* under the traditional concepts of support. 715 F.2d at 1110. The Court is to inquire whether the amount agreed to is manifestly unreasonable in view of the earning power and financial status of the debtor spouse. The state court thoroughly considered the earning power and financial status of the debtor-defendant. Furthermore, under *Calhoun* the Bankruptcy Court is to consider

"[i]f the circumstances of the debtor have changed from the time the obligation to the former spouse ... was created so as to make such support now inequitable the bankruptcy court may consider the debtor's current general ability to pay insofar as it relates to the continuing obligation.... 715 F.2d at 1110, n. 11.

We can find no change in circumstances of the debtor from the time of the state court judgment which would make such support inequitable. The state court findings considered the debtor's future earning capacity and, in fact, structured payment of the judgment accordingly, such that it was to be paid over a 10 year period. Admittedly, any projections as to future earning capacity are speculative. However, we see no change in debtor's circumstances from the entry of the state court judgment—he has his medical degree and is pursuing certain specialty areas of practice. As to any change in circumstances relating to debts, his petition lists only two creditors—KHEAA for a student loan, and his former wife as a result of the state court judgment. Accordingly, the Court finds that the award of support is not manifestly unreasonable under traditional concepts of support and is nondischargeable.

The state court further recognized and awarded total offset credits of $12,248.50 without apportioning these offsets to the respective debts which have now been defined by this Court. Accordingly, these recognized offset credits must be pro-rated against the defined debts as follows: The total indebtedness determined by the state court was $69,916.15; of this sum, $45,-562.50, representing 65.17% of the total debt, has been declared non-dischargeable. That percentage of the offset credits (65.17%) will reduce the net non-dischargeable debt $7,962.35, or a net non-dischargeable debt of $37,580.15.

In like manner, 34.83% of the offset credit will be attributed to the dischargeable debt, reducing same from $24,353.65, with an offset credit of $4,266.15, leaving a net dischargeable debt of $20,087.50.

The above constitutes Findings of Fact and Conclusions of Law pursuant to Rules of Bankruptcy Procedure 7052.