In re Donald Roger ERLER, Debtor.

Judith P. ERLER, Plaintiff,

v.

Donald R. ERLER, John R. Wilson, Trustee, Defendants.

Bankruptcy No. 3–85–01027.
Adv. No. 3–85–0065.

United States Bankruptcy Court, W.D. Kentucky.

April 17, 1986.

Larry C. Ethridge, Louisville, Ky., for plaintiff.

Sam Deeb, Louisville, Ky., for debtor-defendant.

Bruce Boldt, Louisville, Ky., for debtor.

## MEMORANDUM–OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before the Court on plaintiff's Complaint objecting to the discharge of certain debts under 11 U.S.C. Section 523(a)(5)(B). The plaintiff is the former wife of the debtor-defendant, and the "debts" in question arose from the state court decree disposing of the property interests, maintenance and support issues flowing from this divorce proceeding.

At issue is the interpretation to be given certain provisions of the state decree, whether certain awards therein are in the nature of maintenance and/or support. As this Court has stated previously, "it must be recognized that this court in applying the law under Title 11, can neither abate the highly charged emotional feelings of the parties nor lessen the bitterness resulting from the termination of the marital relationship". *In re Bailey*, 53 B.R. 732, 733 (Bkrtcy., W.D.Ky.1985). Our task is to determine the legal consequences of the state court provisions in the context of a subsequently filed bankruptcy, testing whether said provisions or awards are nondischargeable under Section 523(a)(5).

The plaintiff and defendant herein were divorced by decree of the Oldham Circuit Court on September 2, 1982. The divorce decree incorporated a Property Settlement Agreement entered into by the parties on June 1, 1982, which provides in Paragraph 2 thereof, as follows:

> The Husband shall pay to the Wife as and for the support and education of the infant child the sum of Three Hundred Dollars ($300.00) per month, beginning upon the date of the execution of this Agreement and shall make a like payment on each and every consecutive calendar month thereafter until the infant child shall become eighteen (18) years of age, married, emancipated, die, or until the death of the Petitioner, whichever event shall first occur; subject to further orders of the Court. This child support payment is predicated at the present time based on the *present financial circumstances and income earning ability of the Husband as well as the Husband's agreement to assume all debts arising during the marriage as covered hereinafter.* (Emphasis added).

Further Paragraph 13 thereof, in pertinent part, provided as follows:

> ... Husband agrees to assume and take sole responsibility for any obligations that he has personally incurred since January 2, 1981 and specifically agrees to retire any and all obligations to Emil H. Pferrer, *bank notes to First National Bank of Louisville on Wife's automobile,* Husband's truck and an unsecured demand note, Citizens Fidelity Bank on Husband's automobile, notes payable to Mammoth Cave Production Credit Association and any personal obligations concerning this debt or the activities of Wendelon, Inc., *accrued income taxes to Federal, State and local authorities for 1981,* life insurance loans, charge accounts in the Husband's name, personal accounts and bills due and any obligations or liabilities resulting from Husband's practice of law. *Both parties agree to hold each other harmless in their liability and responsibility for the debts assumed hereunder* and indemnify

each other on joint obligations assumed pursuant to this Agreement.... (Emphasis added).

The parties have stipulated that the debt in the amount of $1200.00 representing four months of child support arrearage, is in the nature of support, and pursuant to Section 523(a)(5)(B) is nondischargeable. Remaining in issue is the dischargeability of three monetary obligations which were set forth in the above-referenced Property Settlement Agreement, and more specifically as follows:

(1) $4,824.16 representing car loan payments for a 1981 Toyota.

(2) $585.40 representing a setoff by the IRS from Judith Erler's 1983 Federal tax refund for liability owed on the 1981 Joint Federal tax return of the parties.

(3) Indebtedness, if any, on the contingent liability of 1981 Federal income tax returns which may or may not be liquidated.

It is well-settled that the burden of proof in contesting the dischargeability of a debt is upon the plaintiff-creditor. *In re Calhoun,* 715 F.2d 1103, 1111 (6th Cir.1983); *In re Elder,* 48 B.R. 414, 416 (Bkrtcy., W.D.Ky.1985). The Sixth Circuit has set forth the analysis to be used in support cases under 11 U.S.C. Section 523(a)(5). *Calhoun,* in fact, involved a debt assumption provision as in the instant case. *In re Calhoun, supra* at 1107.

*Calhoun* requires a four-step inquiry to be made by the bankruptcy court to consider whether:

(a) the *intent* of the state court or the parties was to create a support obligation;

(b) the support provision has the actual *effect* of providing necessary support;

(c) the amount of support is so excessive as to be *unreasonable* under traditional concepts of support, and finally,

(d) if the amount of support is unreasonable, *how much* of it should be characterized as nondischargeable for purposes of federal bankruptcy law. *Id.* at 1109–1110;

*In re Helm,* 48 B.R. 215, 221 (Bkrtcy.W.D. Ky.1985); *In re Lineberry,* 55 B.R. 510, 515 (Bkrtcy.W.D.Ky.1985).

As this was an uncontested divorce, this Court must determine whether the parties intended to create an obligation to provide support through the assumption of joint debts. *In re Calhoun, supra* at 1109. In making this determination, the bankruptcy court may consider any relevant evidence including:

> The nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties' agreement or the court's decree; whether other lump sum or periodic payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; the adequacy of support absent the debt assumption; and evidence of negotiation or other understandings as to the intended purpose of the assumption. *Id.* at 1108, n. 7.

■ The Court believes that the "debts" in issue to Judith Erler must be defined differently as to the parties' intent in creating a support obligation. As to the $585.40 representing a set off by the IRS for liability owed on the 1981 Joint Federal return, and the indebtedness, if any, on the contingent liability on the 1981 Federal return, we find that the parties did not intend to create a support obligation by the assumption of these debts by the debtor. This finding is buttressed by a careful consideration of the above-denoted factors, in particular the *nature* of this obligation assumed, and the testimony of the parties as to their understandings of the purpose of the assumption. Ms. Erler's testimony indicates that she signed the joint return over the advice of counsel and in effect, to do her husband a "favor". She further stated that the reason it was included in the property settlement agreement was because Mr. Erler had promised her she "would not get stuck with it". (Transcript of hearing held January 14, 1986, p. 43). We can find no persuasive evidence that the intended purpose of the assumption of the tax liability was for plaintiff's support.

Further, even if we could find the requisite *intent,* we do not think the assumption of this obligation had the actual *effect* of providing support. *In re Calhoun, supra* at 1109. At the time of the agreement in June, 1982, the amount of the 1981 taxes were unknown. It is difficult to construe how this unknown amount could be considered a provision for daily needs. Therefore, we find that the plaintiff has failed in carrying her burden of proving that these two "debts" are nondischargeable.

■ Next, we address the $4,824.16 debt representing car loan payments which were to be assumed by the debtor, pursuant to the provisions of Paragraph 13 of the agreement. Starting again with the first level of the *Calhoun* analysis, we must determine whether the parties intended that the assumption of this debt provide support for Ms. Erler. Using the same factors hereinbefore referred to, we find that both the parties did intend to create a support obligation by the assumption of the car loan payments by debtor. *Calhoun, supra* at 1108, n. 7.

This conclusion is supported by the fact that the only other provision for support was $300.00 month child support, making the support inadequate absent the debt assumption. Perhaps the best evidence of the parties' intent that the assumption of this debt was to provide support is Ms. Erler's testimony. In January, 1981, when the parties separated, they jointly determined that Ms. Erler's living expenses, based on her part-time employment and the needs of their child, were $800.00 per month. By 1982, Ms. Erler was working full-time and Mr. Erler's income had been reduced. Mr. Erler characterizes the entire payment as "child support", but in fact, in his own words, it was support for both she and the child.

> ... it was in January of 1982 was when the child support went from $800 a month to $300 a month. That is when she said she was going to go back to work full-time. *We looked at her ex-*

*penses again, what she needed. Three hundred dollars a month was a figure that was sufficient to meet her—her living needs, along with the fact that I would continue to make her car payment.* And by that time she had changed, she had a bought a—we had gone out and bought her a new 1981 Toyota Corolla stationwagon in May of '81. I had paid that payment during '81. I had paid it during '82. (Transcript, p. 103). (Emphasis added).

The intent that must be determined under *Calhoun* is the intent at the time the property settlement agreement was executed. By his own testimony, Mr. Erler had a "superman" image as to his ability to earn money in the future. (Transcript, p. 95). While such an image may have later proven to be unrealistic, it was, nevertheless, prompted in part by an intent to pay this specific debt.

The next inquiry is whether the assumption of the car loan payments had the actual *effect* of providing necessary support. *In re Calhoun, supra* at 1109. In view of Ms. Erler's income and expenses at the time, including custody and child care expenses, we find that the car loan assumption is "in the nature of" support for purposes of the Bankruptcy Act. We are persuaded that she needed the car in order to maintain her employment and meet her daily needs and that of the child. *In re Holland*, 48 B.R. 874, 877 (Bkrtcy., N.D.Tex. 1984).

Finally, we must determine that the amount of support represented by the assumption ($4,824.16) is not so excessive that it is manifestly unreasonable in view of the earning power and financial status of the debtor spouse. *In re Calhoun, supra* at 1110. In this case, the circumstances of the debtor have changed from the time the obligation was created—he has lost his license to practice law, has had a period of unemployment, and his income for the past several years has been drastically reduced from his income for 1981. Therefore, we must consider the debtor's *current* general ability to pay as it relates

to his *continuing* obligation to assume this debt. *Id.*, n. 11; *Singer v. Singer*, 787 F.2d 1033, 1038 (6th Cir.1986, Judge Guy concurring). Accordingly, in view of the earning power and financial status of the debtor, we find that the car loan assumption is too excessive to be considered "in the nature of" support.

Finally, we must set a reasonable limit on the nondischargeability portion of the obligation. Considering traditional state law factors (see KRS 403.200), as the relative earning powers of these parties and their financial status, including current income and obligations of both, we find that the amount of $2,000.00 can be fairly considered "in the nature of" support for purposes of federal bankruptcy.

A separate Order will be entered this date.