**In re Joe B. HOLDER, Jr., Debtor.**

**Nancy Neil Smith HOLDER, Plaintiff-appellee,**

v.

**Joe B. HOLDER, Jr., Defendant-appellant.**

Civ. A. No. 3:88–0488.
Bankruptcy No. 387–00875.

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 20, 1988.

John C. McLemore, Jr., McMackin, Garfinkle & McLemore, Nashville, Tenn., for plaintiff-appellee.

Paul E. Jennings, Jennings & Derrick, Nashville, Tenn., for defendant-appellant.

## MEMORANDUM OPINION AND ORDER

NEESE, Senior District Judge.

The debtor/appellant Mr. Joe B. Holder, Jr., appeals from (1) the order of January 28, 1988 of the Bankruptcy Court of this District, finding that the obligations of such debtor to pay alimony *in solido* and to maintain certain policies of medical- and life-insurance in effect, are nondischargeable debts pursuant to 11 U.S.C. § 523(a)(5), and also (2) from the order of such Court of March 29, 1988, denying the debtor's motion to alter or amend such order. Oral arguments are deemed unnecessary to a decision herein.

The appellee Ms. Nancy Neil Smith Holder and the appellant/debtor Mr. Joe Holder were divorced in April, 1981. A decree of divorce was entered on April 14, 1981 after the parties had reached a settlement.

That decree required Mr. Holder to pay to Ms. Holder alimony *in solido* in the amount of $264,000 in monthly installments of $1,500 for a period of 14 years and 8 months, with the first installment due and payable on May 1, 1981. It required further that Mr. Holder maintain in force a life-insurance policy for $50,000 with Ms. Holder as its beneficiary and that he provide also medical-insurance for Ms. Holder.

Mr. Holder filed on February 20, 1987 a petition pursuant to chapter 11, of the United States Bankruptcy Code. Ms. Holder initiated an adversary proceeding in the Bankruptcy Court of this District, by filing a complaint against the debtor, seeking to have the pertinent alimony, life insurance and medical insurance obligations, created by the final decree of divorce, declared nondischargeable debts of Mr. Holder.

That Court found such debts to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(5), *supra.* Such section reads in pertinent part:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11] does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a government unit, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

In determining whether the domestic debt herein is dischargeable in bankruptcy, the Bankruptcy Court was required to examine the following factors:

(1) whether the state Court or the parties to the divorce *intended* to create an obligation to provide support;

(2) whether the alimony payments have the effect of actually providing for the support necessary to ensure that the daily needs of the former spouse are satisfied; and

(3) whether the amount of the support payments is so excessive that it is manifestly unreasonable.

*In re Calhoun,* 715 F.2d 1103, 1109–10 (6th Cir.1983).\*

With regard to the first aforestated factor, our Bankruptcy Court found:

There \* \* \* was no intention of the state court to do anything in this matter because the judge directed the parties to

settle the case. Thereafter they entered into a property settlement agreement and final decree of divorce. Therefore, this Court must look to the intention of the parties. It is unquestioned in this Court's mind that Mrs. Holder intended these amounts to be support for her until she reached the age at which she would be eligible for social security. This was borne out by the testimony of her lawyer, Mr. Davis. Mrs. Holder testified she would actually reach social security age in December, 1994, one year before the final payment is made in December, 1995. She testified she discovered this miscalculation while preparing her testimony for this case.

\* \* \* Mr. Holder was aware that the payments were going to be alimony and that he was also aware of the bankruptcy implications of the payments being designated as alimony. During the settlement negotiations in the divorce proceeding, Mr. Holder wrote a letter to Mrs. Holder in which he stated:

I want to point out to you, and I do think that you understand, that if I pay you alimony, I cannot go bankrupt on the money, but you must pay income taxes on the proceeds you get. On the other hand, if you choose to call it a settlement, I will have to pay the taxes, you will owe none, but if I do go bankrupt, I could also choose to bankrupt on this obligation.

Mr. Holder \* \* \* has claimed the payments as alimony on his federal income tax returns each year since the divorce.

Mrs. Holder \* \* \* has treated the payments she has received as ordinary income on her federal income tax returns.

*In re: Joe B. Holder, Jr.,* no. 387–0203, op. of January 28, 1988, at pp. 4–5.

As to the second of such pertinent factors, the Bankruptcy Court found:

Mrs. Holder has found a job as a receptionist/typist and has monthly take-home pay of $682.50. Her regular monthly

---

\* The domestic debt involved therein was the assumption of joint debts in a divorce action. However, the 3 pertinent factors listed apply generally to all actions brought under 11 U.S.C.

§ 523(a)(5), *supra,* dealing with support obligations. *In re Helm,* 48 B.R. 215, 220 (Bank.Ky. 1985); *In re Lineberry,* 55 B.R. 510, 515 (Bank. Ky.1985).

expenses currently exceed $1,000.00 She has exhausted her savings and unless the alimony payments are restored she will not be able to pay the annual insurance premium on the house she has inherited from her mother or the property taxes on that house.

*Ibid.*, at p. 5.

"The Bankruptcy Court's findings of fact are to be accepted unless clearly erroneous, and due regard is to be given the Bankruptcy Judge's opportunity to determine issues of credibility." *In re Cty Green LTD Partnership*, 438 F.Supp. 693, 694 [1] (D.C.Vir.1977). In light of the aforestated findings, which are supported by the record, this Court concludes that such court's finding, that the parties intended the pertinent alimony payments to be used as support for Ms. Holder and that Ms. Holder used the payments for support, and further that without such support she could not meet her daily needs, is not clearly erroneous and, therefore, are accepted by this Court. Rule 8013, Bankruptcy Rules.

As to whether the amount of the foregoing support is so excessive as to be manifestly unreasonable, it was found that, although, given the present financial circumstances of Mr. Holder, $1,500 per month in support payments is somewhat excessive, it is not so excessive as to be "manifestly unreasonable."

In determining whether a support-obligation is manifestly unreasonable, a Court is required to examine the debtor-spouse's ability to pay. "If, at the time the debts were assumed, the assumption substantially exceeded a spouse's present and foreseeable ability to pay, the amount of the assumption which exceeded that ability should not be characterized as in the nature of support." *In re Calhoun, supra*, 715 F.2d at 1110.

The record herein indicates that there is no dispute that, when Mr. and Mrs. Holder entered into their compromise and settlement-agreement the sum of $1,500 monthly for 14 years and 8 months was not an amount that exceeded Mr. Holder's (then) present and foreseeable ability to pay.

However, "[i]f the circumstances of the debtor have changed from the time the obligation to the former spouse to * * * [make support payments] was created so as to make such support unequitable the bankruptcy court may consider the debtors *current* general ability to pay insofar as it relates to the *continuing* obligation to * * * [make such payments]." *Ibid.*, fn. 11.

The Bankruptcy Court found in the latter regard that:

The debtor, Mr. Holder, apparently does not have the funds to pay his alimony and will not have sufficient funds to meet the payments until he gets out of bankruptcy. In light of this the Court has considered some type of equitable relief which would restructure the alimony until this Chapter 11 proceeding has been concluded.

Upon consideration, the Court decided not to do this. The debtor has been in bankruptcy since February, 1987. If this were early in bankruptcy, the Court probably would have done something about the alimony pending confirmation of a plan of reorganization. However, after almost 12 months, this is a bankruptcy proceeding that should have been resolved. The Court further finds it would be more appropriate for the state courts to deal with this problem, especially in light of the arrearage which has accumulated.

*In re: Joe B. Holder, Jr., supra*, at pp. 6–7.

Mr. Holder has testified that his income was then $1,037 per month and that his expenses were $1,153 per month. Clearly, Mr. Holder is not in a financial position presently to meet his support obligations; however, the record herein reflects that Mr. Holder testified that he does envision attaining the future ability to meet such continuing obligation.

This Court would have probably granted the debtor some type of equitable relief under all the circumstances. Even so, the clearly-erroneous standard "does not entitle a reviewing court to reverse the finding of a trier of fact simply because it

[may] have decided the case differently." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511[3], 84 L.Ed.2d 518 (1985).

Furthermore, as Mr. Holder admitted to foreseeing an ability to make the pertinent payments in the future, and having failed to make a timely effort to resolve this matter, this Court is unable to conclude that the Bankruptcy Court's finding, that the debtor's pertinent support obligation is not manifestly unreasonable, is clearly erroneous. Mr. Holder may propose an alternate payment-schedule in a Plan of Reorganization, should that be his desire.

In addition, this Court concludes that such Court's findings, that the pertinent medical-insurance policy was intended and necessary for Ms. Holder's support and maintenance, and that the pertinent life insurance policy is necessary to give Ms. Holder partial assurance that she will receive the support intended by the final divorce decree in the event of Mr. Holder's death, likewise is not clearly erroneous. Rule 8013, Bankruptcy Rules, *supra.*

Thus, the orders of January 28, 1988 and March 29, 1988 of the Bankruptcy Court of this District hereby are

AFFIRMED.