**In re Terry Hall ARMSTRONG, Debtor.**

**Teresa Dawn ARMSTRONG, Plaintiff,**

**v.**

**Terry Hall ARMSTRONG, Defendant.**

**Bankruptcy No. 96–10742.
Adv. No. 96–5128.**

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Dec. 18, 1996.

388

John Van Den Bosch, Jackson, TN, for Debtor.

Stephen L. Hughes, Milan, TN, for Plaintiff.

Ted Hunderup, Humboldt, TN, Chapter 7 Trustee.

## MEMORANDUM OPINION AND ORDER RE COMPLAINT EXCEPTING DEBT TO TERESA DAWN ARMSTRONG FROM DISCHARGE

G. HARVEY BOSWELL, Bankruptcy Judge.

The plaintiff, Teresa Dawn Hall, filed this complaint seeking to except from discharge a debt owed by the debtor, Terry Hall Armstrong. The plaintiff alleges that the defendant debtor is indebted to The Bank of Milan ("Bank") with respect to certain indebtedness for which the debtor was ordered to assume and hold the plaintiff harmless by virtue of a divorce decree entered on August 18, 1995. The plaintiff contends that the debt in question is in the nature of alimony, maintenance and support or, in the alternative, arose in connection with her divorce from the debtor defendant and, thus, is nondischargeable pursuant to 11 U.S.C. § 523(a)(5) and/or (15). The court conducted a trial in this matter on November 25, 1996 pursuant to FED. R.BANKR.P. 7001 et seq. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I). The following shall serve as this court's findings of fact and conclusions of law pursuant to FED. R.BANKR.P. 7052.

### I. Findings of Fact

Chancellor George R. Ellis of the Gibson County Chancery Court awarded the plaintiff an absolute divorce from the debtor and entered a Final Decree on August 18, 1995. Exhibit 1.[1] Chancellor Ellis found that the Marital Dissolution Agreement ("MDA"), dated May 17, 1995, Exhibit 2, made equitable provisions for the division of the parties' marital property and incorporated by reference the MDA in the Final Decree.

In the MDA, the plaintiff and the debtor each agreed to be responsible for certain debts and hold the other harmless. Specifically, the debtor agreed to pay the debt owed to the Bank in the approximate amount of $13,000.[2] The debtor failed to pay the Bank as agreed, and the debtor subsequently filed a voluntary petition for relief under the Bankruptcy Code on March 11, 1996. Because the Bank was unable to recover payments from the debtor, the Bank has called on the plaintiff, who is a legally obligated on the debt, to pay the debt.

The plaintiff testified, based on a printout from the Bank, that as of August 9, 1996, the balance due on the note to the Bank was $19,528.80 with a monthly payment of approximately $436. Exhibit 5. She further testified that she does not have the ability to pay the debt to the Bank and pay her ongoing obligations. The plaintiff submitted a notarized Financial Statement, Exhibit 3, wherein plaintiff lists her monthly income, including $75 per week in child support paid by the defendant, at $1650.12. The plaintiff testified that since she prepared the Financial Statement she has received a 10% pay increase, which amounts to approximately an additional $15 in take home pay. She lists her monthly liabilities at $1,834.00. The plaintiff testified that the amounts of $100 for clothing and $300 for food are estimates; however, she maintains that these amounts accurately reflect her average monthly expenses. The plaintiff has two children, but only one of the children is the debtor's child. The plaintiff relies on her Financial Statement and her testimony as proof that she is unable to pay the debt owed to the Bank.

The debtor testified that he earns $15.50 per hour in the construction industry as a concrete worker. He submitted two pay stubs showing a net income of $555.23 for 47.5 hours of work and $475.00 for 39.5 hours of work. He testified that he nets about $480.43 for 40 hours of work. While the weather often dictates when the debtor can work, he testified that he consistently works 30 to 60 hours per week. The debtor pays $75 per week in child support. He also pays $150 per month to the IRS for sales tax. He

---

1. The court admitted Exhibits 1 through 4 by stipulation.

2. The MDA required the plaintiff to execute a quitclaim deed and all other documents of title necessary to relinquish all her right, title and interest in and to the properties securing the debt owed to the Bank.

The defendant also agreed to be responsible for debts owed to Visa in the amount of $4,565.79 and Lowes in the amount of $2,186.19.

lives with his mother and pays no rent,[3] but he has an informal agreement with his mother to pay for groceries and the utility bills. He has no automobile payment, although he maintains insurance on his vehicle, and he has no credit card debt.[4] The debtor also testified that the Bank had offered to work with him with regards to a monthly payment that the debtor could afford. The debtor admitted, however, that he had not made any effort to talk with a representative of the Bank about the Bank's offer.

Finally, the debtor testified that he was not represented by counsel during the divorce and that he did not understand the significance of the hold harmless agreement in the MDA. He stated at the trial that at the time of the divorce he was earning $10 per hour and could not afford to pay the debts he agreed to assume. However, the defendant admitted at the trial that he can pay part of the assumed debts at this time.

## II. Conclusions of Law

### A. 11 U.S.C. § 523(a)(5)

The plaintiff seeks to have the debt to the Bank declared nondischargeable pursuant to § 523(a)(5) and/or (15). For a debt to be nondischargeable under § 523(a)(5),[5] it must be one that (1) is owed to a spouse, former spouse or child of the debtor; (2) has not been assigned to another entity, except pursuant to section 402 of the Social Security Act; (3) arose in connection with a divorce decree, separation agreement, property settlement agreement, order of a court of record or determination made by a governmental unit with state or territorial law; and (4) is

3. Defendant's mother has paid for her house.

4. Of course, under the terms of the MDA, the defendant is responsible for holding the plaintiff harmless on the Visa debt he incurred as a result of his divorce from the plaintiff.

5. (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination

"in the nature of alimony, maintenance or support." *See Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517 (6th Cir.1993); *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983).

To determine if the debt in question is in the nature of support, alimony or maintenance, the court looks to the MDA entered into by the parties. The MDA contemplates in paragraphs 1, 3 and 4 a division of real and personal property between the plaintiff and the debtor. Paragraph 2 contains the only discussion in the MDA pertaining to support obligations, which specifically discusses support for the parties' minor child. The division of debts discussed in paragraph 5 does not include any language regarding support. In fact, the language specifically corresponds, in part, with the real property division found in paragraph 1. *See* Exhibit 2. Additionally, at no time during the trial did the plaintiff argue that the debt was in the nature of support. As a result, the court finds that the debt to the Bank is not one in the nature of alimony, support, or maintenance, but rather is simply a division of property, and § 523(a)(5) does not apply.

### B. 11 U.S.C. § 523(a)(15)

Subsection (a)(15) excepts from discharge any debt:

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
 (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act [42 U.S.C. § 602(a)(26)], or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.
11 U.S.C. § 523(a)(5).

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). Section 523(a)(15) has the effect of making all divorce related obligations subject to a presumption of nondischargeability. *Cleveland v. Cleveland (In re Cleveland),* 198 B.R. 394, 397 (Bankr. N.D.Ga.1996); *Schmitt v. Eubanks (In re Schmitt),* 197 B.R. 312, 315 (Bankr.W.D.Ark. 1996) This court has exclusive jurisdiction to determine if the debt in question is nondischargeable. 11 U.S.C. § 523(c)(1); *see In re Smither,* 194 B.R. 102, 106 (Bankr.W.D.Ky. 1996) (noting that § 523(c)(1) grants federal courts exclusive jurisdiction over § 523(a)(15) matters while granting concurrent jurisdiction with state courts over § 523(a)(5) matters).

### (i) Burden of Proof

Before the court can review the evidence presented at the trial, the court must first determine on whom the burden of proof rests. Since Congress amended § 523 and added subsection (a)(15), several courts have grappled with the issue of burden of proof. Some courts have strictly followed *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991), which held that in an action brought under § 523(a) the burden of proof lies with the plaintiff to prove all of the elements of his or her case by a preponderance of the evidence. *See Greenwalt v. Greenwalt (In re Greenwalt),* 200 B.R. 909 (Bankr.W.D.Wash.1996) (finding that in a § 523(a)(15) proceeding the plaintiff has the motivation and ability to demonstrate that the debtor has the ability to pay the obligation in question and to prove that the detrimental consequences of discharge outweigh the benefits the debtor would otherwise gain); *In re Dressler,* 194 B.R. 290

(Bankr.D.R.I.1996) (finding that shifting the burden to the defendant debtor is unnecessary to carry out § 523(a)(15)'s purpose); *In re Butler,* 186 B.R. 371 (Bankr.D.Vt.1995).

 The majority of courts, however, have ruled that the plaintiff creditor *only* has the burden of proving that (1) the debt is not a debt which is nondischargeable under § 523(a)(5) and (2) the debt was incurred "in the course of divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with state or territorial law by a governmental unit ..." in order for it to be nondischargeable under § 523(a)(15). *See In re Smither,* 194 B.R. 102, 107 (Bankr.W.D.Ky. 1996). If the plaintiff meets this burden of proof, then the burden shifts to the debtor who must either prove an inability to pay the debt under § 523(a)(15)(A) or that a discharge of the debt would result in a benefit to the debtor that outweighs the detrimental consequences of a discharge to the spouse, former spouse, or children of the debtor under § 523(a)(15)(B). *Smither,* 194 B.R. at 107; *Cleveland,* 198 B.R. at 397; *Schmitt,* 197 B.R. at 316. This court agrees with the majority of courts on the issue of burden of proof. The debtor is the party in the position to know fully the extent of his or her financial condition. However, both the debtor and the creditor will have to present evidence under § 523(a)(15)(B) regarding the consequences of the discharge on the respective parties.

### (ii) Ability to Pay

 The court will measure the debtor's ability to pay as of the date of the trial. In making this determination, the court will not focus on a single moment in time or mere "snapshot" of the debtor's financial strength. Rather the court will look to the totality of the circumstances, including the debtor's future earning potential, as well as his or her income as of the date of the trial. *Smither,* 194 B.R. at 107; *Dressler,* 194 B.R. at 300; *Belcher v. Owens (In re Owens),* 191 B.R. 669, 674 (Bankr.E.D.Ky.1996).

■ To determine the amount of income that a debtor earns for purposes of § 523(a)(15), several courts have used the "disposable income" test. *Greenwalt,* 200 B.R. at 913; *Smither,* 194 B.R. at 108; *Dressler,* 194 B.R. at 304; *Slover v. Slover (In re Slover),* 191 B.R. 886, 892 (Bankr.E.D.Okla. 1996); *Owens,* 191 B.R. at 674. Some courts have used the "undue hardship" test found in § 523(a)(8). *In re Comisky,* 183 B.R. 883 (Bankr.N.D.Cal.1995); *In re Straub,* 192 B.R. 522 (Bankr.D.N.D.1996) However, the language of subsection (a)(15) is almost identical to the language found in § 1325(b)(2); therefore, this court finds the "disposable income" test to be the appropriate standard by which to determine the debtor's ability to pay.

■ Several courts have enumerated several factors for this court to consider regarding the debtor's ability to pay:

1. The debtor's "disposable income" as measured at the time of trial;

2. The presence of more lucrative employment opportunities which might enable the debtor fully to satisfy his divorce-related obligation;

3. The extent to which the debtor's burden of debt will be lessened in the near term;

4. The extent to which the debtor previously has made a good faith effort towards satisfying the debt in question;

5. The amount of the debts which a creditor is seeking to have held nondischargeable and the repayment terms and condition of those debts;

6. The value and nature of any property the debtor retained after his bankruptcy filing;

7. The amount of reasonable and necessary expenses which the debtor must incur for the support of the debtor, the debtor's dependents and the continuation, preservation and operation of the debtor's business, if any;

8. The income of debtor's new spouse as such income should be included in the calculation of the debtor's disposable income;

9. Any evidence of probable changes in the debtor's expenses.

*Smither,* 194 B.R. at 108–09; *Cleveland,* 198 B.R. at 398. A debtor has the ability to pay an obligation, for purposes of § 523(a)(15)(A), if the debtor has sufficient disposable income to pay all or a material part [6] of a debt within a reasonable amount of time.

■ The debtor in the instant case testified that he nets approximately $480.43 for 40 hours of work. He also testified that he consistently works 30 to 60 hours per week. Further, he testified that his expenses include a $75 per week payment for child support, $150 per month payment to the IRS, groceries, utilities, and insurance. The debtor has no rent payment, no car payment, and no additional credit card debt. Being overly generous with regards to the debtor's monthly expenses, the court finds that the debtor has well over $1,000 per month in disposable income.

### (iii) Balancing Hardships

■ Even though the debtor in this case has the ability to pay the debt in question, the debtor may still obtain a discharge if he can prove by a preponderance of the evidence that "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse or child of the debtor . . . ." 11 U.S.C. § 523(a)(15)(B). The court must compare the evidence of the debtor's standard of living as opposed to the plaintiff's standard of living to balance the equities in this case. If the debtor's standard of living will be greater than or approximately equal to the plaintiff's standard of living if the debt is not discharged, then the debt should be considered nondischargeable. If, however, the debtor's standard of living

---

**6.** The *Smither* court held that a court may grant a partial discharge of § 523(a)(15) debts. In so holding, the court followed the student loan discharge analysis. 194 B.R. at 109. The *Cleveland* court also indicated that it would likely allow partial discharges; however, the court found that it did not need to decide that issue in this particular case. 198 B.R. at 400 n. 8. Likewise, this court does not need to decide this issue in the instant case.

will fall materially below that of the plaintiff's if the debt is not discharged, then the debt should be discharged. In other words, if the court finds that the debtor will "suffer more" by not receiving a discharge that the plaintiff would suffer if the debt were discharged, then the court will discharge the debt. *See Smither*, 194 B.R. at 110–11.

▆▆▆▆ To properly balance the equities, the court should consider, at a minimum, the following factors:

1. The amount of debt involved, including all payment terms;

2. The current income of the debtor, objecting creditor and their respective spouses;

3. The current expenses of the debtor, objecting creditor and their respective spouses;

4. The current assets, including exempt assets of the debtor, objecting creditor and their respective spouses;

5. The current liabilities, excluding those discharged by the debtor's bankruptcy, of the debt, objecting creditor and their respective spouses;

6. The health, job skills, training, age, and education of the debtor, objecting creditor and their respective spouses;

7. The dependents of the debtor, objecting creditor and their respective spouses;

8. Any changes in the financial conditions of the debtor and the objecting creditor which may have occurred since the entry of the divorce decree;

9. The amount of debt which has been or will be discharged in the debtor's bankruptcy;

10. Whether the objecting creditor is eligible for relief under the Bankruptcy Code; and

11. Whether the parties have acted in good faith in the filing of the bankruptcy and the litigation of the § 523(a)(15) issues.

*Smither*, 194 B.R. at 111. Applying these considerations to the facts of the instant case, the court finds that the debt is nondischargeable. First, the court notes that the debtor

has in excess of $1,000 from which to make a monthly payment of $436 to the Bank. The uncontroverted evidence of the plaintiff's financial condition, on the other hand, is that her monthly net income is $1,650.12 while her monthly liabilities are $1,843.00. Thus, while the debtor still sees at least $500 per month of disposable income if he pays the debt, the plaintiff already faces a deficit situation every month without the burden of paying on the debt. Clearly the detriment to the plaintiff in the event the debt is not discharged is greater to the plaintiff than the benefit to the debtor is the debt is discharged. Further, the court notes that the debtor admitted on the stand that he can afford to pay "some" of the debt to the Bank. It is the opinion of this court that the debtor can pay all of the debt owed to the Bank without suffering.

▆▆▆ Finally, the court considered the debtor's argument that he did not understand the impact of the MDA as he was not represented by counsel during the divorce proceedings. The MDA, however, specifically states that the plaintiff is represented by counsel and that the debtor is entitled to retain the services of an attorney to represent his interest if he so desires. Further, the MDA states in paragraph 11.F.:

> The "parties understand that this Marital Dissolution Agreement is entered into without any undue influence, fraud, coercion, or misrepresentations, or for any reason not herein stated. The parties represent that the provisions of this Marital Dissolution Agreement are fair and equitable, and that it is being entered into voluntarily. Each party agrees to abide by the provision of this Marital Dissolution Agreement.

Based on the foregoing language found within the MDA, which the debtor signed, the court finds the debtor's argument that he was not aware of the impact of the MDA to be without merit.

### III. Attorney Fees

▆▆▆▆ Pursuant to paragraph 11.C. of the MDA, the plaintiff seeks attorney fees in the amount of one-third of the debt in question. Paragraph 11.C. states:

In the event it becomes reasonably necessary for either party to engage in legal proceedings to procure enforcement of any provision of this Marital Dissolution Agreement, he or she shall also be entitled to a judgment for reasonable expenses incurred in prosecuting such action including, but no limited to, attorney fees and court costs.

After an objection by the debtor's attorney, the plaintiff's attorney stated that he would accept fees based on his hourly rate of $100 per hour instead of one-third of the amount of the debt. The court finds that the language in the MDA is clear as to right of the plaintiff to recover attorney fees. However, the court agrees with the debtor's counsel that the amount of fees should be based on the hourly rate of the plaintiff's counsel. The court asked for and received an affidavit from Mr. Hughes wherein he states he worked 13.95 hours on this case for a total fee of $1,395.00. Mr. Hughes further stated that the expenses incurred in this case total $311.82. The court, therefore, awards the plaintiff fees and expenses in the amount of $1,706.82.

### IV. Order

It is therefore **ORDERED** that, pursuant to 11 U.S.C. § 523(a)(15), the debt incurred by the debtor in connection with a divorce proceeding owed to The Bank of Milan is nondischargeable. It is **FURTHER ORDERED** that the debtor pay the plaintiff's attorney fees and expenses in the amount of $1,706.82 as required by the Marital Dissolution Agreement.

**IT IS SO ORDERED.**