In re Marshall E. BARNES, Debtor.

Dolores C. BARNES, Plaintiff,

v.

Marshall E. BARNES, Defendant.

Bankruptcy No. 95–55376.
Adversary No. 95–0728.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Feb. 27, 1998.

Carl E. McCoy, Jr., Newark, OH, for plaintiff.

Wesley C. Emerson, Columbus, OH, for debtor.

Karen Bond Coriell, Pickerington, OH, for defendant/debtor.

### OPINION AND ORDER ON PLAINTIFF'S COMPLAINT TO DETERMINE DIS-CHARGEABILITY OF DEBT

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on plaintiff Dolores C. Barnes' amended complaint seeking a determination that the $36,000 debt owed to her by her former husband, Marshall E. Barnes (the "debtor") is nondischargeable under 11 U.S.C. § 523(a)(4), (5), (6) and (15). The debtor denied the debt was nondischargeable, and the matter was tried to the Court on September 4, 1997.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a) and the General Order of Reference entered in this District. This is a core proceeding which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(I).

Following the presentation of the plaintiff's case-in-chief, the debtor moved for judgment as a matter of law on all four claims. The Court, for the reasons stated on the record at that time, granted the motion as to the § 523(a)(4) and (6) counts, but denied the motion as to the § 523(a)(5) and (15) counts.

The debtor renewed his motion at the close of all of the evidence. The Court granted the motion as it pertained to § 523(a)(5) because the plaintiff had not shown that the obligation was in the nature of support. The § 523(a)(15) claim, therefore, is the only remaining claim to be decided.

Title 11, United States Code, Section 523(a)(15) provides that a discharge under § 727 does not discharge a debtor from any debt:

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

■ Generally, the party attempting to except a debt from discharge bears the burden of proving by a preponderance of the evidence that the debt falls into one of the exceptions enumerated in § 523(a). *Barclays/American Business Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393–94 (6th Cir.1994), *cert. denied*, 513 U.S. 1111, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995) (citations omitted). The majority of bankruptcy courts, including many within the Sixth Circuit, however, have not applied this general

principle to § 523(a)(15). Rather, they have required that the plaintiff make a threshold showing that the obligation in question does not fall within the parameters of § 523(a)(5), and that the obligation was incurred "in connection with a separation agreement, divorce decree, or other court order of record.. . . ." Once this showing is made, the burden of proof has shifted to the defendant-debtor to prove either that he or she does not have the ability to pay the debt or that its discharge would result in a benefit to him or her greater than the harm to the plaintiff. *Carroll v. Carroll (In re Carroll)*, 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995); *Belcher v. Owens (In re Owens)*, 191 B.R. 669, 674 (Bankr.E.D.Ky. 1996); *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 324–25 (Bankr. N.D.Ohio 1996); *Armstrong v. Armstrong (In re Armstrong)*, 205 B.R. 386, 391 (Bankr. W.D.Tenn.1996).

■ After considerable review of the case law, this Court has determined that the exceptions to nondischargeability set out in § 523(a)(15)(A) and (B) are best treated as affirmative defenses. The creditor plaintiff, therefore, need only establish that a debt was incurred by the debtor in the course of a marital action and is not in the nature of support. That proof is enough for a judgment of nondischargeability unless the debtor, who is generally the defendant in these actions, pleads and establishes either (A) or (B). This will require the debtor to obtain information about the plaintiff's financial circumstances if (B) is the chosen defense. If the debtor is able to establish (A) or (B), then the debt will be discharged. Viewing the statute in this manner will give a more definite structure to these trials and, hopefully, will eliminate some of the confusion that results from the difficult and tortured manner in which the statute was drafted. At least one court has found that the exceptions are affirmative defenses. *See Hill v. Hill (In re Hill)*, 184 B.R. 750 (Bankr.N.D.Ill.1995).

The Court already has determined the debt is not of the kind described in § 523(a)(5). Further, the debt arose in connection with the parties' divorce decree which was entered by the Licking County domestic relations court in accordance with Ohio law. Thus, the debt is not dischargeable unless the debtor can prove by way of an affirmative defense that either subsection (A) or (B) applies.

■ In determining whether the defendant-debtor has the ability to pay the obligation in question, bankruptcy courts have applied the "disposable income" test of § 1325(b)(2) because of the similarity of language between § 523(a)(15)(A) and § 1325(b)(2). *Armstrong*, 205 B.R. at 392; *Owens*, 191 B.R. at 674; *Carroll*, 187 B.R. at 200–01. The "disposable income" test includes the following factors:

1. The debtor's "disposable income" as measured at time of trial;

2. The presence of more lucrative employment opportunities which might enable the debtor to fully satisfy his divorce-related obligation;

3. The extent to which the debtor's burden of debt will be lessened in the near term;

4. The extent to which the debtor previously has made a good faith effort towards satisfying the debt in question;

5. The amount of the debts which a creditor is seeking to have held nondischargeable and the repayment terms and conditions of those debts;

6. The value and nature of any property the debtor retained after his bankruptcy filing;

7. The amount of reasonable and necessary expenses which the debtor must incur for the support of the debtor, the debtor's dependents, and the continuation, preservation and operation of the debtor's business, if any;

8. The income of debtor's new spouse as such income should be included in the calculation of the debtor's disposable income; and

9. Any evidence of probable changes in the debtor's expenses.

*Armstrong*, 205 B.R. at 392 (citations omitted).

The evidence showed that the debtor had taxable income of $67,131.67 in 1995 and $73,759.78 in 1996. Included in these

amounts are $5,002 and $5,601 representing the value of the debtor's car allowance in 1995 and 1996, respectively. At the time of trial, the debtor had earned $58,418 year-to-date in 1997 based on an annual salary of $76,000. The debtor was also eligible for a year-end bonus based on the company's performance. In 1996, that bonus was equal to 5% of his salary.

According to Schedule I of the debtor's bankruptcy petition filed on September 26, 1995, his take-home pay was $4,000 per month. At that time, the debtor also received $700 per month adoption assistance which by the time of trial, he no longer received. Although no current wage stubs were submitted, the Court finds that due to increases in the debtor's base salary since the date of filing, his take-home pay clearly would be in excess of $4,000 per month, and most likely would be in the neighborhood of $4,400 per month.

The debtor currently pays $750 per month in rent for a home in Hilliard in which he and the parties' two natural children reside. The adopted twins are now in separate residential treatment centers. The debtor does not pay for the twins' room and board, but continues to be responsible for some out-of-pocket medical expenses not covered by Medicaid. He estimates that he owed some $6,500 for such postpetition expenses at the time of trial.

Other household expenses include utilities, food, clothing, laundry and drycleaning, medical and dental expenses, recreation, transportation, insurance, and day care. The monthly expenses for these items on the debtor's Schedule J totaled $1,892. There was no testimony that these expenses had increased by the date of trial; and, in fact, since the twins were no longer living in the debtor's home, a decrease could be expected. There was also testimony that the debtor's obligation to pay out-of-pocket medical expenses for the twins might cease in the near future if the parties' permanent surrender of these children is approved.

The debtor relinquished the 1993 Ford Aerostar van, the 1991 Isuzu pickup, and his interest in the parties' former residence in Pataskala. Thus, he is no longer responsible for any monthly payments associated with this property. He did not retain any other liened property and did not reaffirm any debts.

There was no evidence that the debtor would acquire any employment opportunities more lucrative than his present job. The debtor does not operate a business and has not remarried.

The amount of the debt the plaintiff is seeking to have held nondischargeable is $36,000. The debtor was to pay this sum in equal monthly installments of $750. The debtor failed to establish that he had made any of the $750 payments and filed his chapter 7 petition in contravention of the parties' agreement not to file bankruptcy within one year of their divorce.

■ Based on the Court's review of the evidence concerning each of the "disposable income" factors, the Court finds that the debtor did not satisfy his burden of proving by a preponderance of the evidence that he is unable to pay the marital obligation under the terms of the parties' divorce decree. The only evidence to the contrary was the testimony of the debtor's domestic attorney who opined that forcing the debtor to pay the plaintiff $750 per month would be devastating to him and his two children, and would force him to take a second job. Given its own analysis of the debtor's current financial condition based on the evidence at trial, the Court does not consider this testimony to be persuasive.

Although the Court has determined that the debtor has the ability to pay the $36,000 in monthly installments of $750, he may still discharge this obligation if he can establish by a preponderance of the evidence that "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a ... former spouse...." 11 U.S.C. § 523(a)(15)(B).

The plaintiff came forward with testimony concerning her own present financial condition and provided copies of her 1995 and 1996 federal tax returns. The evidence showed a drop in her adjusted gross income from $9,174 in 1995 to $4,193 in 1996. She cur-

rently earns $9.00 per hour working at Office Max, but. with only a high school education and a history of minimum wage jobs, she has little hope of earning significantly more in the future. She was involved in a serious accident in 1996 which affected her ability to work. As a result of this accident, she has incurred some $25,000 in medical expenses. She has a pending personal injury claim arising out of the accident, but has not received any offers of settlement. She drives an older car in need of extensive repairs and cannot afford to purchase another vehicle or to pay for the repairs. In order to meet her day-to-day expenses, she has been forced to borrow some $1,600 from her brothers and smaller sums from other family members.

■ In light of this evidence, the Court concludes that discharging the $36,000 obligation would have a significantly negative impact on the plaintiff. On the other hand, the Court calculates that the debtor has approximately $1,750 each month after deducting rent and household expenses to make the $750 monthly payment to the plaintiff and to pay for any out-of-pocket expenses for the twins' medical treatment. Therefore, the Court does not believe that discharging the debt would result in a comparable benefit to the debtor. Based on the totality of theses circumstances, the Court concludes that the debtor has not satisfied his burden of proof under § 523(a)(15)(B).

For the foregoing reasons, the Court determines that the $36,000 debt owed to the plaintiff by the debtor is nondischargeable under 11 U.S.C. § 523(a)(15). Accordingly, judgment shall be entered in favor of the plaintiff on this count, provided that the plaintiff shall not execute on this judgment as long as the debtor makes monthly payments of $750 beginning March 15, 1998, and continuing until the $36,000 is paid in full.

**IT IS SO ORDERED.**