In re Ronald W. WOOLARD, Debtor.

**Ronald W. Woolard, Plaintiff,**

**v.**

**June B. Axline, Defendant.**

**Bankruptcy No. 99–59201.**
**Adversary No. 99–0401.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Aug. 6, 2001.

John P. Brody, Kegler, Brown, Hill & Ritter, Columbus, OH, for plaintiff/debtor.

Michael T. Gunner, Hilliard, OH, for defendant.

## OPINION AND ORDER ON PLAINTIFF'S AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS (11 U.S.C. § 523(a)(15))

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the plaintiff's amended complaint to determine the dischargeability of certain obligations he incurred in connection with the parties' separation agreement. This separation agreement subsequently was incorporated into their decree of dissolution.

The Court has issued a separate opinion and order regarding the discharge of the plaintiff's marital debts under 11 U.S.C. § 523(a)(5). The Court determined in that decision only $1,000 of the monthly spousal payments constituted nondischargeable support. The Court will determine here whether the remainder of those payments, as well as certain other obligations under the separation agreement are nondischargeable under § 523(a)(15). The following, together with pertinent facts from the § 523(a)(5) opinion and order, consti-

tute this Court's findings of fact and conclusions of law on this issue.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core matter which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(I).

Title 11, United States Code, Section 523(a) provides in relevant part:

A discharge under section 727 ... of this title does not discharge an individual from any debt—

. . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor ... in connection with a separation agreement ... unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ...;[1] or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

■ The burden of proof is on the defendant to show that the debts are not of the type excepted from discharge under § 523(a)(5). *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (6th Cir. BAP 1998). If the defendant satisfies her burden, the plaintiff must then prove by a preponderance of the evidence either of the exceptions to nondischargeability found in subsections (A) and (B) respectively, *Id.*

---

**1.** The omitted language concerns debtors who are engaged in business. At the time of the plaintiff's bankruptcy filing, and the trial of this adversary, his former businesses were no longer in operation.

There are three provisions set forth in the parties' separation agreement to be considered. First and foremost is the plaintiff's obligation to pay the defendant $3,100 per month for a period of 84 months. In the § 523(a)(5) opinion and order the Court determined $1,000 of this monthly payment to be nondischargeable support, leaving the dischargeability of the remaining $2,100 per month to be determined under § 523(a)(15).

The second provision ordered the plaintiff to maintain a life insurance policy with a death benefit of $400,000 until December 31, 1998. This amount would then decrease by $40,000 each year for the next 10 years. The defendant was to be the named beneficiary of the policy.

Lastly, the parties agreed not to incur any indebtedness for which the other might be responsible.[2] At some point following their dissolution, the plaintiff made several charges on a credit card which he believed at the time was in his name. When he stopped making payments on the credit card shortly before his bankruptcy, the company sought payment from the defendant. She, in turn, initiated a contempt action against the plaintiff in state court. At this time, the plaintiff discovered that the primary obligor on the credit card was the defendant and that he was merely an additional cardholder. The plaintiff contacted the credit card company to have the account switched over to his name, and he has been making $200 payments each month ever since. At the time of trial, the account balance was approximately $9,000.

The Court in a separate opinion and order has determined that $2,100 of the $3,100 spousal payment was not of the kind described in § 523(a)(5). Therefore, the defendant, despite advocating a position contrary to that holding, has met her burden under § 523(a)(15). *See Molino,* 225 B.R. at 907.

Although the parties focused their attention at trial as to what constituted nondischargeable support on the $3,100 per month obligation, the requirement that the plaintiff maintain life insurance could also be viewed as falling within the scope of § 523(a)(5). *See Holder v. Holder (In re Holder),* 92 B.R. 294, 297 (M.D.Tenn.1988); *Caster v. Caster (In re Caster),* 1994 WL 797866 (Bankr.N.D.Ohio 1994). Nevertheless, the Court will assume for the purposes of this opinion and order that the plaintiff's duty to maintain life insurance was not intended as support for either the defendant or their minor daughter, Kelsey. Thus, the burden shifts to the plaintiff to prove that this obligation is dischargeable under § 523(a)(15)(A) or (B).

■ The fact that both parties are prohibited from incurring debt for which the other might be liable indicates that this provision of the separation agreement was not intended to provide support. Accordingly, the plaintiff must show that he is either unable to pay the credit card debt or that discharging this debt would result in a benefit to him that substantially outweighs the detriment to the defendant.

■ In determining whether the plaintiff has the ability to meet the three obligations, the Court will apply the disposable income test of 11 U.S.C.

---

**2.** The parties appear to believe the relevant provisions of the separation agreement to be either II F or H of the separation agreement. These provisions, however, concern the removal of the defendant's name from business indebtedness which existed at that time and holding her harmless for any debts that might result from those liabilities in the future. In contrast, all of the credit card charges were made *after* the parties' dissolution. *See* March 5, 2001 Transcript of Proceedings p 197.

§ 1325(b)(2). *Barnes v. Barnes (In re Barnes)*, 218 B.R. 409, 411 (Bankr. S.D.Ohio 1998). This test includes the following factors:

1. The debtor's "disposable income" as measured at time of trial;

2. The presence of more lucrative employment opportunities which might enable the debtor to fully satisfy his divorce-related obligations;

3. The extent to which the debtor's burden of debt will be lessened in the near term;

4. The extent to which the debtor previously made a good faith effort to satisfy the debts;

5. The amount of the debts which a creditor is seeking to have held nondischargeable and the repayment terms and conditions of those debts;

6. The value and nature of any property the debtor retained after his bankruptcy filing;

7. The amount of reasonable and necessary expenses which the debtor must incur for the support of the debtor, the debtor's dependents, and the continuation, preservation, and operation of the debtor's business, if any;

8. The income of debtor's new spouse as such income should be included in the calculation of the debtor's disposable income; and

9. Any evidence of probable changes in the debtor's expenses.

*Id.* [citations omitted]

■ The plaintiff entered into a contract with Club Corp. on March 1, 2001, to manage the Capital Club. The contract calls for an annual salary of $85,000. At the time of trial, the plaintiff had not yet received his first paycheck under this contract. Based on his immediate prior employment with Club Corp., however, various tax withholdings would reduce his take-home to around 72% of his gross salary. This would result in a monthly net income of approximately $5,100. The plaintiff is also eligible for a year-end incentive bonus based on his performance and the gross operating profit of the business. He estimated this bonus could be $0 to $15–18,000.

From this net income, the plaintiff must pay $1,000 per month alimony to the defendant and $970 per month child support. He also pays health insurance premiums of $180 per month. The parties' separation agreement requires the plaintiff to maintain health insurance coverage for their minor daughter, Kelsey. The monthly total for these nondischargeable support obligations is $2,150.

The monthly mortgage payment, including real estate taxes and insurance, in which the plaintiff resides with his current wife is $1,970. He has no ownership interest in the residence and is not liable under the mortgage. Prior to the purchase of the home, the plaintiff and his current wife lived in a condominium owned by a trust set up for the benefit of the wife and her children. She paid only $115 per month in condominium fees. When the condominium proved to be too small for their needs, the trust sold it and applied $150,000 of the proceeds to the purchase of the new home. Before he remarried, the plaintiff paid $1,500 rent for a three-bedroom apartment, a figure not significantly below the mortgage payment.

The plaintiff and his current wife have only one automobile, a 1997 Buick Riviera. The wife owns the car; however, the plaintiff appears to be the primary user at this time and pays the monthly installment of $500. The plaintiff estimated the monthly expense of a second car to be $300. The Court believes this figure to be the more appropriate car expense for the plaintiff.

Insurance on such a vehicle should run no more than $100 per month. Other transportation costs, such as gasoline and maintenance, are estimated to be $140 a month. Therefore, the plaintiff's total monthly automobile expenses are $540.

Other necessary expenses include utilities which the plaintiff estimated to run $500 per month on average. Without further evidence, the Court believes $300 to be a more realistic figure. The plaintiff maintains a monthly food budget of $600 which includes both groceries and restaurant costs. He has clothing costs of $150 per month, laundry and dry cleaning expenses of $75, and medical and dental expenses of $80 per month. In addition, he pays a monthly life insurance premium of $100 with the beneficiary being his current wife. Combined these monthly expenses total $1,305.

The Court believes that the plaintiff conducted a diligent search and has obtained the most lucrative employment opportunity he could find. Even if he were to receive the maximum bonus of $18,000, he would likely net only $1,080 per month average over the year. His expenses are not likely to decrease over the next several years.

The Court also finds that the debtor previously made a good faith effort to satisfy the debts arising from the separation agreement. He made all of the $3,100 payments to the defendant in 1998 and a considerable portion in 1999. The stoppage of these payments coincided with the demise of the plaintiff's businesses based on circumstances which were beyond his control.

Although the plaintiff's bankruptcy discharged a tremendous amount of personal liability for his business' debts, he continues to face tax liabilities ranging from $15,000 to $23,000 to the Internal Revenue Service and the State of Ohio. He took little or no property under the separation agreement except for his businesses which are now defunct. He currently owns no real estate or automobiles, and has no savings for his eventual retirement.

The plaintiff's current wife is not employed. She is a high school graduate with no specialized training and earned less than $7.00 per hour at her last job. She no longer receives spousal support from her former husband and believes that any current payments or arrearages are uncollectible. Should she return to work the Court believes she is unlikely to take home more than $1,000 per month. Work-related expenses, such as clothing and transportation, would further reduce this figure by half. In addition, $300 of the net income would go to the support of her son who is currently a student at Baldwin–Wallace College.

Having considered the relevant factors under § 523(a)(15)(A), the Court determines that the plaintiff has proven by the preponderance of the evidence that he is unable to pay the additional monthly spousal payment of $2,100 to the defendant. At best, the plaintiff's net household income would be $7,180. Total expenses would be $6,765, leaving a net disposable income of $415.

Under these same factors, the Court determines that the plaintiff has not shown his inability to pay the life insurance premium of $120 per month and the $200 monthly payment on the credit card debt. Subtracting these payments from the $415 would further reduce net monthly disposable income to $95, a negligible amount particularly given the speculative nature of the plaintiff's $18,000 bonus.

Subsection 523(a)(15)(B) requires a balancing test to arrive at the actual benefit to the plaintiff of discharging the obligations versus the hardship that the

defendant and the parties' daughter would suffer as a result of discharge.[3] *Molino*, 225 B.R. at 908–09.

If, when making this analysis, the debtor's standard of living will be greater than or approximately equal to the creditor's if the debt is not discharged, then the debt should be nondischargeable under the § 523(a)(2)(B) test. However, if the debtor's standard of living will fall materially below the creditor's standard of living if the debt is not discharged, then the debt should be discharged under 11 U.S.C. § 523(a)(15)(B).

*Id.* at 909 [citation omitted].

The Court has already determined that the plaintiff has the ability to pay the life insurance premium of $120 per month. Not discharging this obligation, thus, will not result in a substantial hardship to the plaintiff. On the other hand, the defendant and the parties' daughter will suffer significant hardship should this obligation be discharged and the plaintiff die prior to the termination of his support obligations. Accordingly, the plaintiff has not met his burden of proof under subsection (B) with respect to this obligation.

The Court likewise found that the plaintiff could afford to make the monthly $200 payment toward the credit card debt. A review of the defendant's financial condition clearly indicates that she is not in the position to assume this debt. Furthermore, the equities greatly favor the defendant in this instance given the fact that the plaintiff ran up $9,000, albeit unknowingly, on her credit card after the parties' disso-

lution. This debt, therefore, will not be discharged under § 523(a)(15)(B).

Based on the foregoing, the Court determines that the additional spousal payment of $2,100 per month is dischargeable pursuant to § 523(a)(15)(A). The plaintiff's obligation to maintain a life insurance policy with the defendant as beneficiary as well as his obligation to hold her harmless on the credit card debt are determined to be nondischargeable.

**IT IS SO ORDERED.**

---

**3.** Subsections (A) and (B) are in the disjunctive. Therefore, in light of the determination that the plaintiff is unable to pay the additional $2,100 spousal payment, the Court is not required to apply this balancing test to that particular obligation. However, were the Court to conduct such an inquiry, much con-

sideration would be given to the defendant's earnings potential. If the defendant returned to her teaching career instead of continuing in the present business venture, her monthly net income would likely equal or exceed the $2,100.