*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 08b0005n.06**

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: JAMES F. KREMPA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | No. 07-8027 |
| _____ | ) | |
| | ) | |
| | ) | |
| JAMES F. KREMPA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BETH A. WESTERBEEK | ) | |
| f/k/a BETH A. KREMPA, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Western District of Michigan, Northern Division.
No. 05-99031.

Submitted: November 14, 2007

Decided and Filed: April 9, 2008

Before: PARSONS, SHEA-STONUM, and WHIPPLE, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** Donald W. Bays, Marquette, Michigan, for Appellant.

———————————
**OPINION**
———————————

MARY ANN WHIPPLE, Bankruptcy Appellate Panel Judge. James F. Krempa appeals the bankruptcy court's judgment that an obligation owed to his ex-wife is nondischargeable pursuant to 11 U.S.C. § 523(a)(5). The bankruptcy court accorded a state court order preclusive effect in rendering its judgment. Because we find that the state court order was not a final order entitled to preclusive effect, we reverse the judgment and remand for further proceedings.

## I.   ISSUE ON APPEAL

The issue before the Panel is whether a prior state court order precluded the bankruptcy court from independently determining that an obligation the Appellant owed to his ex-wife, as set forth in their divorce judgment, is support or a property settlement.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Michigan has authorized appeals to the Panel and a final order of the bankruptcy court may be appealed as of right. 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). "A bankruptcy court's judgment determining dischargeability is a final and appealable order." *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 109 (B.A.P. 6th Cir. 2007) (quoting *Hertzel v. Educ. Credit Mgmt. Corp. (In re Hertzel)*, 329 B.R. 221, 224-25 (B.A.P. 6th Cir. 2005)).

Determinations of dischargeability under 11 U.S.C. § 523 are conclusions of law reviewed de novo. *Id.* The application of collateral estoppel is also reviewed de novo. *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 301 (B.A.P. 6th Cir. 2004) (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir. 1999)). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's

determination." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007).

The factual determinations underlying the bankruptcy court's dischargeability findings are upheld on appeal unless they are clearly erroneous. *In re Fox*, 370 B.R. at 109. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985)).

### III.   FACTS

Appellant James F. Krempa ("Debtor") is the debtor in the chapter 7 case underlying the adversary proceeding in which this appeal arises. He filed an adversary complaint in the bankruptcy court seeking a declaration that certain payments he owed to his ex-wife, as set forth in their divorce judgment, are subject to discharge. The bankruptcy court ruled it was precluded from finding that the payments were a property settlement by a prior state court order that stated the payments were spousal support. After a subsequent trial at which it determined that the payments were necessary and reasonable, the court ruled that the payments were, therefore, non-dischargeable pursuant to 11 U.S.C. § 523(a)(5). Debtor appeals from the initial Opinion and Order entered on January 30, 2007, finding that the prior state court order was entitled to preclusive effect, and the final judgment entered on May 7, 2007, finding Debtor's debt to his ex-wife non-dischargeable and dismissing his complaint.

The facts are undisputed. The Debtor and Beth Westerbeek ("WesterBeek") divorced in 2002. They entered into a Divorce Settlement Agreement ("Agreement"), which was incorporated into a Judgment of Divorce entered by the Oakland County Circuit Court, State of Michigan ("State Court") on August 2, 2002. The Agreement required the Debtor to pay $1,000 per month to Westerbeek for "Spousal Support." Pursuant to the Agreement, Debtor made these payments until

Westerbeek remarried in 2004. The Agreement also required the Debtor to pay monthly "Section 71 Payments."[1] In pertinent part, the section of the Agreement setting forth these payments provides:

> 32.   As additional property settlement, [Debtor] shall pay to [Westerbeek] IRC Section 71 payments payable in cash, without interest, in the following amounts and for the following times. . . .[2]
>
> [Debtor's] obligation to make these payments shall terminate absolutely upon [Westerbeek's] death, and for no other reason. . . . The payments are not dischargeable by [Debtor] in the event of his personal bankruptcy.
>
> . . . .
>
> 34. It is acknowledged and agreed by [Westerbeek] and [Debtor] that these amounts shall be treated as payments that qualify pursuant to Section 71(b) of the Internal Revenue Code; and, accordingly, said Section 71 payments are taxable to [Westerbeek] and includable in her gross income and deductible to [Debtor] on their respective federal, state and/or local income tax returns.

(J.A. at 255-56.)

In July 2004, the Debtor ceased making the "Section 71" payments. That prompted Westerbeek to file a motion for contempt in the State Court. Following a hearing on the motion, and an agreement reached by the parties, the State Court entered an order on May 4, 2005, which required that the Debtor pay $17,500 in arrearages pursuant to a set payment schedule.

The Debtor did not make the payments required by the May 4, 2005 order. Instead, on May 25, 2005, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code.[3] Westerbeek

---

[1] This obligation is named for Section 71 of the Internal Revenue Code, which provides that alimony and separate maintenance payments received by a party to a divorce agreement are to be treated as income by the recipient. 26 U.S.C. § 71. The parties do not dispute that the payments under this section of the Agreement meet the Internal Revenue Code's definition of alimony and that Westerbeek has reported the payments she received as income on her federal tax returns.

[2] Payments of $2,500 were to be made from August 2002 until July 2007, $4,000 from August 2007 until July 2012, and $5,000 from August 2012 until July 2017.

[3] Because the Debtor filed his bankruptcy petition prior to October 17, 2005, the case is governed by the Bankruptcy Code without regard to the amendments made to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1330 (2004), unless otherwise specifically noted.

then moved to schedule a hearing before the State Court seeking to again enforce the "Section 71" payments. On June 22, 2005, the State Court issued an order that stated:

> [Westerbeek] filed a show cause seeking to enforce the payment of amounts labeled as Section 71(b) payments, contending that same are spousal support. The parties stipulated to the entry of the May 4, 2005 order. The [Debtor] filed a petition in the Bankruptcy Court. [Westerbeek] asked the court to enforce the payments due her contending the automatic stay did not apply to these payments. [Debtor] stated that he believed that the payments were property settlement payments, not spousal support. The court asked the parties to file briefs in support of their respective positions. The court has reviewed the briefs.
>
> It is hereby ordered that for the reasons stated in [Westerbeek's] brief and the statements of the court placed on the record that the payments labeled as Section 71 payments are spousal support payments and not property settlement payments.
>
> It is further ordered that the court will proceed with the show cause on a date to be selected by counsel and the court.

(J.A. at 244.)

On July 13, 2005, the Debtor commenced his adversary proceeding against Westerbeek seeking a declaration that the "Section 71" payments in the divorce judgment are subject to discharge. On January 29, 2007, the bankruptcy court issued an opinion in which it decided that, while it would find in favor of the Debtor and declare the "Section 71" payments to be part of an overall property settlement in the divorce, it was precluded from doing so by the State Court's June 22, 2005 order. The court concluded that 28 U.S.C. § 1738 and the doctrine of collateral estoppel barred the Debtor from asserting that the payments are a part of the property settlement under 11 U.S.C. § 523. The court then reserved final judgment pending trial on the issue of whether the payments were necessary and reasonable.

After trial, the bankruptcy court rendered a bench opinion finding the "Section 71" payments reasonable and necessary and holding, therefore, that Debtor's obligation to Westerbeek is non-dischargeable pursuant to 11 U.S.C. § 523(a)(5).[4] On May 7, 2007, the court entered judgment

---

[4] The bankruptcy court concluded that the 1994 amendments to the Bankruptcy Code eliminated the second and third prongs of the test set forth by the Sixth Circuit Court of Appeals in *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103 (6th Cir. 1983), the necessity of the payment and the reasonableness of the obligation. However, the court went

dismissing the Debtor's adversary proceeding with prejudice. This timely appeal followed. Westerbeek did not participate in the appeal.

## IV. DISCUSSION

The doctrine of collateral estoppel applies in dischargeability proceedings. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315 (6th Cir. 1997); *see also Rally Hill Prod., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51 (6th Cir. 1995) (citing *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S. Ct. 654, 658 n.11 (1991)). The bankruptcy court must make its own determination regarding the dischargeability of the debt, but that determination may be governed by factual issues that were actually and necessarily decided by the State Court. *Vogel v. Kalita (In re Kalita)*, 202 B.R. 889, 894 (Bankr. W.D. Mich. 1996). Whether collateral estoppel barred the bankruptcy court from independently considering whether the debt is in the nature of support or a property settlement depends upon whether a Michigan state court would accord the judgment preclusive effect. *In re Calvert*, 105 F.3d at 317; *see also Helfrich v. Thompson (In re Thompson)*, 262 B.R. 407, 410 (B.A.P. 6th Cir. 2001) ("A federal court is required to give a state court judgment the same preclusive effect that the judgment would have in state court."). If a Michigan state court would accord the judgment preclusive effect, and Congress has not expressly or impliedly created an exception to the provisions of 28 U.S.C. § 1738, which require federal courts to give full faith and credit to the judicial proceedings of state courts, then the bankruptcy court must give the State Court order preclusive effect. *In re Calvert*, 105 F.3d at 317.

The Michigan Supreme Court requires the following elements to be met for application of the doctrine of collateral estoppel under Michigan law: "'(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and ***final*** judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel.'" *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845-46 (Mich. 2004) (quoting *Storey v. Meijer, Inc.*, 429 N.W.2d 169, 172 n.3 (Mich. 1988)) (emphasis added).

---

on to conclude that if those determinations were relevant, it would still find in favor of Westerbeek because she continues to need the payment. In addition, the bankruptcy court concluded that despite a change in the Debtor's financial circumstances, there is "nothing so compelling, based upon his current circumstances, that I find it is appropriate to relieve him through the exercise of a discharge of these obligations . . . ." (J.A. at 239.) Because we find that the State Court order was not final and, therefore, not preclusive, we need not reach this issue.

The second and third elements of collateral estoppel under Michigan law have been met. The Debtor had a full and fair opportunity to litigate the issue before the State Court. He was represented by counsel, the issue was briefed, and a hearing was held. There was also mutuality of estoppel as the same parties were before both the State Court and the bankruptcy court.

The first element is problematic. The State Court's June 22, 2005 order, which concluded that the payments in question are spousal support, decided an issue that is necessary for the bankruptcy court to decide when determining whether the debt is dischargeable. *See Sorah v. Sorah (In re Sorah)*, 163 F.3d 397 (6th Cir. 1998); *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir. 1983) ("[W]hile it is clear that Congress intended that federal not state law should control the determination of when . . . [a debt] is 'in the nature of' alimony or support, it does not necessarily follow that state law must be ignored completely. . . . Divorce, alimony, support and maintenance are issues within the exclusive domain of the state courts."). Therefore, a question of fact essential to the bankruptcy court's judgment has actually been litigated and determined by the State Court. We must determine, however, whether the State Court order is final under Michigan law.

Michigan Court Rule 7.202(6)(i) defines a final judgment as "the first judgment or order that disposes of *all the claims* and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order." Michigan Court Rules 7.202(6)(i) (West 2007) (emphasis added); *see also D. Haywood & Assocs., P.C. v. Fox*, 2004 WL 2365045, *2 (Mich. Ct. App. Oct. 21, 2004) (unpub.) ("Black's Law Dictionary defines a final judgment as 'a court's last action that settles the rights of the parties and disposes of *all issues in controversy*.'" (emphasis added)). The State Court order did not dispose of all of the claims nor all the issues in controversy raised by Westerbeek's motion. The hearing that resulted in entry of the June 22, 2005, State Court order was a preliminary hearing in ongoing contempt and enforcement proceedings initiated by Westerbeek. The subject matter of the hearing was procedural, namely, whether the automatic stay prevented the show cause proceedings for contempt from continuing. It did not decide the motion, conclude those proceedings or reach any determination of contempt one way or another. The order itself states that the parties and the court would select a new date to proceed with the show cause order. The Panel finds that the June 22, 2005, State Court order was not final under Michigan law and was not entitled to be afforded collateral estoppel effect by the bankruptcy court.

While the bankruptcy court did note that the order did not end the proceedings before the State Court, it satisfied itself that the order is "sufficiently final for the purposes of collateral estoppel in this instance" because it was a discrete matter that was distinct from the enforcement proceedings. (J.A. at 105.) Such an order may be final in the bankruptcy context. *See Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 488 (6th Cir. 1996) (In bankruptcy cases, an order that finally disposes of discrete disputes within a larger case may be appealed immediately.). However, the issue here is whether a Michigan state court would accord the order preclusive effect.

## V. CONCLUSION

The State Court order is not entitled to preclusive effect and, therefore, may not serve as a basis for the bankruptcy court's decision as to whether the "Section 71" payments are dischargeable under § 523(a)(5). The bankruptcy court erred in its determination that it was precluded from independently determining whether the obligation is in the nature of support or a property settlement. Based on the foregoing, the bankruptcy court's order is REVERSED and REMANDED for further proceedings consistent with this opinion.[5]

---

[5] The majority of this Panel disagrees with the concurring opinion that a dischargeability determination under § 523(a)(15) should be addressed by the bankruptcy court on remand. Pre-BAPCPA § 523(c) provides that the debtor shall be discharged from a debt of a kind specified in subsection (a)(15) "unless, *on request of the creditor* to whom such debt is owed" the court determines the debt to be excepted from discharge under that subsection. (Emphasis added). Under Rule 4007(c), such a request must be made by way of a complaint filed no later than 60 days after the first date set for the meeting of creditors. There is nothing in the record that suggests that Westerbeek ever made a request for a determination under § 523(a)(15) by way of a complaint or otherwise. There also appears to be no indication that the parties sought a ruling under § 523(a)(15) or believed they were litigating issues under that subsection. Rather, it appears from the parties' trial briefs and the bankruptcy court's written order entered on January 30, 2007, that both the court and the parties believed only § 523(a)(5) was at issue.

———————————————

**CONCURRENCE**

———————————————


MARILYN SHEA-STONUM, Bankruptcy Appellate Panel Judge. James F. Krempa ("Krempa") appeals the bankruptcy court's judgment that an obligation owed to his ex-wife is nondischargeable pursuant to 11 U.S.C. § 523. The bankruptcy court accorded a state court order preclusive effect in rendering its judgment. I join in the Panel's decision to reverse the judgment and remand for further proceedings because the state court order was not entitled to preclusive effect. I write this concurrence to express my concern that in light of the uniqueness of this case – that Krempa, the debtor spouse, is the plaintiff in an action seeking a declaratory judgment regarding the dischargeability of a "Section 71" obligation brought within 60 days after the first meeting of creditors – the appeal calls for consideration of § 523(a)(15) as it existed prior to the adoption of BAPCPA in 2005.

Notwithstanding the absence of an affirmative reference to § 523(a)(15) in the complaint, the request necessarily was included in the declaratory judgment sought by Krempa. Krempa sought a determination of dischargeability of the "Section 71" obligation, also referred to in Krempa's complaint as "additional property settlement." This declaratory judgment was sought prior to the expiration of the 60-day statute of limitations set forth in § 523(c) and Bankruptcy Rule 4007(c). To provide the declaratory relief sought by the debtor in that time frame, a court would consider both §§ 523(a)(5) and 523(a)(15). *See Armstrong v. Armstrong (In re Armstrong)*, 205 B.R. 386, 391 (Bankr. W.D. Tenn. 1996); *Cleveland v. Cleveland (In re Cleveland),* 198 B.R. 394, 397 (Bankr. N.D. Ga. 1996) (finding that because of the passage of § 523(a)(15), all debts arising from divorce or separation agreement or decree are *prima facie* non dischargeable.).

In this instance, the bankruptcy court arguably made findings related to an analysis under § 523(a)(15). However, the bankruptcy court record is confusing. In a footnote in his written opinion, the bankruptcy court noted that § 523(a)(15) had not been raised affirmatively by either party to the adversary proceeding. Notwithstanding the footnote and following a later full

evidentiary hearing that appears to have addressed the factors relevant for a dischargeability determination pursuant to § 523(a)(15), the bankruptcy court appears to have found that the Section 71 obligation was not dischargeable under § 523(a)(15).

The lack of clarity in the bankruptcy court record, evidenced by a comparison of the footnote in the written opinion of the bankruptcy court with the specific finding of the bankruptcy court during its oral opinion, makes it difficult to discern whether the bankruptcy court actually reached a decision with respect to § 523(a)(15).

Although an appellate court can affirm based on any ground supported by the record, *Stuart Gold v. FedEx Freight East, Inc. (In re Rodriguez)*, 487 F.3d 1001, 1011 (6th Cir. 2007), the lack of clarity in the bankruptcy court record makes it impossible to discern whether the bankruptcy court actually did reach a decision with respect to § 523(a)(15). Therefore, I join the Panel in remanding to the bankruptcy court.